Plaintiff-appellant, Harry Aldridge, appeals a decision of the Preble County Court of Common Pleas denying his motion to terminate an order to pay spousal support to defendant-appellee, Jeri Aldridge (Italiano).
On December 9, 1993, appellant filed for divorce from appellee. On March 27, 1995, the trial court granted the divorce to appellant. Pursuant to the divorce decree, appellant was ordered to pay appellee $250 a month in spousal support. The spousal support is to terminate upon appellee's or appellant's death, remarriage by appellee, or when appellee is living in a quasi-marital state with a member of the opposite sex.
On July 22, 1997, appellant filed a motion to terminate spousal support in the trial court alleging that appellee was living in a quasi-marital relationship with a Tony Rivers.
On August 15, 1997 and August 25, 1997, the trial court held a hearing to determine whether appellant's spousal support obligation should be terminated. At the hearing, Rivers testified that he and appellee work together, and that on several occasions Rivers helped appellee with household repairs, provided transportation for appellee's daughter, stayed the night at appellee's home, and took care of appellee when she was injured. In addition, Rivers testified that he and appellee have an exclusive sexual relationship.
Appellant claims that in early 1997, Rivers moved into appellee's home at 403 McKinley Drive in Camden, Preble County, Ohio. Although Rivers signed a lease to reside at 327 North Barron Street in Eaton, appellant claims that Rivers rarely spent any time at that address, and subleased his apartment to appellee's son and the son's girlfriend. During Rivers' stay at appellee's home, he fixed the kitchen ceiling, painted the deck, repaired the garage door, painted the exterior and interior of appellee's house, mowed the grass, redecorated the interior, fixed the water heater, and took out the garbage. Appellant and his wife hired a private investigator and all three have witnessed Rivers leave appellee's home in the mornings to go to work. Thus, appellant claims that the duration and quality of Rivers' presence at appellee's home constitutes a quasi-marital relationship.
In contrast, appellee claims that Rivers is a friend and that they never had sexual relations in her home. As a friend, Rivers helped her when she was injured and with some household repairs. Appellee and Rivers do not share the mortgage or any other bills. Rivers claims that he shares his apartment and expenses with appellee's son and the son's girlfriend as roommates. Therefore, appellee asserts that her spousal support should not be terminated because appellee's and Rivers' financial lives are completely separate.
By judgment entry filed on September 4, 1997, the trial court found that Rivers and appellee were not cohabiting and held that appellee is not in a quasi-marital relationship. Therefore, appellant's motion to terminate spousal support was denied.
Appellant has filed this appeal and raises the following six assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AS IT FAILED TO MAKE A DEFINITE FINDING AS TO WHETHER TONY RIVERS AND JERI ALDRIDGE (ITALIANO) WERE LIVING TOGETHER.
Assignment of Error No. 2:
 THE TRIAL COURT'S FAILURE TO FIND THAT TONY RIVERS AND JERI ALDRIDGE(ITALIANO) "LIVED" TOGETHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY REQUIRING THAT "MONETARY" SUPPORT BE A NECESSARY CONDITION TO A FINDING OF COHABITATION, AS SUPPORT CAN TAKE THE FORM OF LABOR AS WELL.
Assignment of Error No. 4:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND TONY RIVERS PROVIDED LABOR, BUT THEN FAILED TO MAKE A FINDING OF COHABITATION.
Assignment of Error No. 5:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND FINANCIAL SUPPORT WAS PROVIDED BY RIVERS, BUT THEN FAILED TO MAKE A FINDING OF COHABITATION.
Assignment of Error No. 6:
 THE TRIAL COURT'S FINDING OF NO COHABITATION OR NOT LIVING TOGETHER IN A QUASI-MARITAL STATE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Cohabitation implies the concept of support by another and is a basis to terminate spousal support. Thomas v. Thomas (1991),76 Ohio App.3d 482, 485, citing Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. However, cohabitation is not a clearly defined concept. Ohio, like many other jurisdictions, has struggled with the definition of cohabitation.
Cohabitation has been defined as the assumption of marital rights, duties, and obligations, but it is not dependent upon sexual relations. Riddle v. Riddle (Aug. 29, 1988), Richland App. No. CA-2582, unreported, at 4, citing Black's Law Dictionary (5th Ed. 1979) 236. The common meaning of cohabitation has been held to be the act of living together. Birthelmer v. Birthelmer (July 15, 1983), Lucas App. No. L-83-046, unreported, at 10. However, "living together" does not resolve the definitional problems of cohabitation.
The concept of "living together" has been held to be the frequent, consistent, or isolated sexual acts accompanied with other aspects of living together. State v. Van Hoose (Sept. 27, 1993), Clark App. No. 3031, unreported. However, the absence of sexual relations will not result in a finding that cohabitation does not exist. State v. Miller (1995), 105 Ohio App.3d 679, 664.
The confusion surrounding cohabitation has led the Ohio Supreme Court to define cohabitation. In Ohio v. Williams (1997),79 Ohio St.3d 459, 464-65, the Ohio Supreme Court held that:
 The essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium * * *. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.
These factors provide a framework to determine cohabitation; the weight given to them will differ from case to case. Id. at 465.
In his first and third assignments of error, appellant argues that the trial court erred as a matter of law when it found that appellee and Rivers were not cohabiting and that the trial court erred as a matter of law when it considered monetary contributions to be a necessary element of cohabitation. We disagree.
Spousal support was created for the purpose of meeting the financial needs of the former spouse. Barclay v. Barclay (Dec. 11, 1997), Franklin App. No. 97APF07-902, unreported, at 3, citing Moell v. Moell (1994), 98 Ohio App.3d 748. When the former spouse is living with another person who is providing financial support, then the need for spousal support no longer exists and should be terminated. Moell at 751. Therefore, mere "living together" is insufficient to support a motion to terminate spousal support. Id.
Within the context of divorce decrees, cohabitation implies that the former spouse and the paramour have assumed marital obligations, including financial support. Bussey v. Bussey (1988), 55 Ohio App.3d 117. Thus, cohabitation implies not only a relationship, sexual or otherwise, but some sort of monetary support between the former spouse and the paramour so as to be the functional equivalent of a marriage. Barrett v. Barrett (June 10, 1996), Butler App. No. CA95-06-110, unreported. This is to prevent the former spouse from receiving financial support from two sources. Taylor v. Taylor (1983), 11 Ohio App.3d 279, 280. Therefore, a showing of mere living together is insufficient; there must be a showing of mutual financial support before spousal support can be terminated. Id. at 279. To hold otherwise would defeat the purpose for which spousal support was created and would be manifestly unjust to the financially disadvantaged spouse.
Based on the foregoing, it was essential for the trial court to determine whether there is financial contribution by Rivers before terminating appellee's spousal support. The trial court did recognize that Rivers helped appellee with household repairs, but Rivers did not contribute to the mortgage, utilities, or to any other living expense appellee incurred. Further, the trial court considered Rivers' living arrangements and found that Rivers had his own apartment for which he paid the rent and the utilities. The trial court looked at whether appellee and Rivers had mutual accounts, and whether Rivers contributed financially to appellee's standard of living, and concluded that Rivers and appellee maintained independent and separate financial lives. The trial court not only considered financial contribution but properly considered all aspects of appellee's and Rivers' relationship when it concluded that there was no cohabitation. Competent, credible evidence supports the trial court's conclusion. Appellant's first and third assignments of error are overruled.
In his second and sixth assignments of error, appellant argues that the trial court's finding that appellee and Rivers were not cohabiting together and were not living in a quasi-marital state was against the manifest weight of the evidence. We disagree.
Cohabitation is a question of fact that is best settled by the trial court. Moell, 98 Ohio App.3d at 752. However, a reviewing court may reverse the trial court if the judgment is not supported by some competent, credible evidence going to all the essential elements of the case. Myers v. Garson (1993), 66 Ohio St.3d 610,614, citing Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77.
The trial court found that Rivers did not keep his clothes, personal toilet articles, furniture, or other household property at appellee's home. In fact, most of what Rivers owned was at his apartment. Rivers occasionally stayed over at appellee's home, but the trial court held this was for convenience since the parties often shared a ride to work. Further, Rivers had his own apartment and his roommates testified that every month Rivers paid his share of the rent and living expenses. Thus, there was no evidence to establish that Rivers and appellee were living together in a quasimarital relationship.
Appellant did not offer any evidence to show that Rivers contributed financially to appellee or that they were sharing financial expenses. The only facts appellant established were that Rivers and appellee shared meals and that Rivers stayed over at appellee's home a considerable number of times. However, sharing meals is insufficient to establish cohabitation. Irwin v. Irwin (May 31, 1984), Madison App. No. CA83-06-019, unreported. Further, Rivers' presence at appellee's home does not rise to a level of financial support.
We find that the trial court properly considered all the relevant evidence and that there was sufficient competent and credible evidence to support the trial court's finding of no cohabitation. Therefore, appellant's second and sixth assignments of error are overruled.
In his fourth assignment of error, appellant argues that the trial court abused its discretion when it failed to find Rivers' labor to be a form of financial support. We disagree.
To find that the trial court abused its discretion, a reviewing court must find that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The trial court's finding must be more than an error of law or judgment. Id.
In the case at bar, the trial court heard a considerable amount of testimony from both sides, reviewed investigative reports, rent receipts, notes, pay stubs, and photographs. It is undisputed that Rivers helped appellee with some household repairs. However, appellant has not provided this court, nor has this court found, any case or law that requires a finding that a paramour's labor can be a form of financial support for purposes of terminating spousal support.
Financial sharing takes the form of sharing "provisions for shelter, food, clothing, utilities, and/or commingled assets." Williams, 79 Ohio St.3d 459, 465. It implies that one is making provisions for the basic living needs of another. The fact that Rivers helped repair the garage door, repaired the water heater, and helped appellee with other items does not mean that his acts rise to a level of providing financial support. We therefore find that the trial court's holding that Rivers' labor did not amount to financial support was not arbitrary, unreasonable or unconscionable. Appellant's fourth assignment of error is overruled.
In his fifth assignment of error, appellant argues that the trial court abused its discretion when it found that Rivers supported appellee financially but then failed to find cohabitation. We disagree.
Appellant is mistaken as to the trial court's findings. In its decision, the trial court found that there was no direct evidence that Rivers paid appellee for the privilege of staying at her home. Nor was there any evidence that Rivers paid for or contributed to appellee's living expenses. The only fact established at trial was that Rivers took appellee out for an occasional meal. The trial court did not equate this to financial support by Rivers. See Irwin, Madison App. No. CA83-06-019, unreported. On the contrary, the trial court ruled that such conduct did not rise to a level of financial contribution to appellee. Therefore, appellant's fifth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.