This is an appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division, which ordered a division of the parties' property and ordered appellee/cross-appellant to pay spousal support as part of a divorce action.
On appeal appellant/cross-appellee, Cathy Lowry, sets forth the following five assignments of error:
 "ERROR NO. I: THE COURT ERRED IN FINDING THAT THE REAL ESTATE CONVEYED BY DEFENDANT'S FATHER WAS NOT A GIFT TO BOTH PARTIES AND THAT THE VALUE OF THE CONVEYANCE AND THE OBLIGATION OF REPAYMENT WAS $21,700.
 "ERROR NO. II: THE COURT ERRED IN REDUCING THE NET EQUITY IN THE MARITAL RESIDENCE AS TO BOTH PARTIES BASED UPON A JOINT OBLIGATION OF REPAYMENT.
 "ERROR NO. III: THE COURT ERRED IN NOT REIMBURSING PLAINTIFF-APPELLANT HER PRE-MARITAL MONIES REALIZED FROM THE SALE OF A PRE-MARITAL RESIDENCE SOLD DURING THE MARRIAGE OF THESE PARTIES.
 "ERROR NO. IV: THE JUDGMENT IN THIS CASE IS CONTRARY TO LAW.
 "ERROR NO. V: THE JUDGMENT IN THIS CASE IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellee/cross-appellant, Mark Lowry, sets forth the following as his sole cross-assignment of error:
 "THE COURT ERRED IN AWARDING THE APPELLANT SPOUSAL SUPPORT."
The undisputed facts that are relevant to the issues raised on appeal are as follows. The parties were married on March 1, 1991. After the marriage, the parties resided in a mobile home that was previously owned and occupied by appellant. Sometime in 1992, appellee's father deeded three acres of land jointly to appellant and appellee ("lot"). Thereafter, the parties obtained a bank loan and built a three thousand two hundred square foot home on the lot. When the home was completed in 1993, appellant sold her mobile home for $7,000, and used the proceeds of the sale to reduce the parties' outstanding credit card debt.
On October 24, 1996, appellant filed a complaint for divorce. On October 31, 1996, appellee filed an answer and counterclaim for divorce and, on November 8, 1996, appellant filed a reply to appellee's counterclaim. On May 23, 1997, appellant filed a motion for attorney fees and court costs.
On May 29, 1997, a hearing was held before magistrate James M. Sharp, at which testimony was presented by appellant, appellee and appellee's father, Kenneth Lowry. Before the hearing began, the parties entered several joint stipulations as to the value of their marital assets and retirement accounts. The remaining relevant issues to be decided by the magistrate were whether the parties had an obligation to repay appellee's father for the lot, the value of the lot, whether appellant should retain the $7,000 in proceeds from the sale of the mobile home as separate property, and the amount of spousal support, if any, to be paid to appellant by appellee.
Appellant testified at the hearing that she is a communications technician at Bowling Green State University, and that her salary in 1996 was $37,000. Appellant further testified that she used $4,000 of the proceeds from the sale of her mobile home to pay off debts incurred in the building of the house, and applied the remaining $3,000 to appellant's credit card debt. Appellant stated that she put a new roof and a deck on the mobile home before she married appellee. Appellant further stated that when the lot was deeded to appellee and her, she thought it was a gift, and that neither appellee or Kenneth Lowry told her that Lowry expected to be repaid for the land. As to the issue of spousal support, appellant testified that she would like to receive $500 per month for two years, so that she could afford to purchase another home.
Kenneth Lowry testified at the hearing that he purchased a one hundred six acre farm on a land contract before the parties were married, and that he used his severance pay from BP Oil Company to pay off the land contract before conveying the three acre lot to appellant and appellee. Lowry further testified that he directed his attorney to deed the lot to the parties jointly because, in his opinion, "it's good for marriages to have both names on a deed." Lowry stated that he had expected to be repaid for the lot at some future date, "when [appellant and appellee] got on their feet."
Lowry testified on cross-examination that he did not tell his attorney, his son or appellant that he expected to be repaid for the lot; however, he did tell his wife he expected to be repaid. Lowry stated that he never asked appellee for a specific amount of money for the lot, and that he could not sell that particular lot to a third party because of its location. Finally, Lowry testified that he did not intend to give appellant and appellee the lot as a gift because he used his retirement funds to purchase the farm, and he could not afford to give a similar gift to his daughter.
Appellee testified at the hearing that he is a boiler operator for BP Oil Company, and that his salary in 1996, including overtime pay, was $61,692. Appellee further testified that he first discussed "getting land off [his father]" during his first marriage, several years before he met and married appellant. Appellee stated that he never discussed paying his father for the lot; however, to be fair to his sister and his father, he "wanted" to pay for the lot when he "got back on his feet." Appellee further stated that appellant and he could not have obtained a bank loan to build a home without owning the lot. Appellee also stated that he used some of his own money to help appellant pay for the roof repairs and the deck on her mobile home.
On cross-examination, appellee testified that his father and he had never discussed a price for the lot; however, its appraised value was $21,700. Appellee further testified that he had made no attempt to repay his father for the lot, even though he received $22,000 from his former employer, Toledo Edison, as a settlement for an on-the-job injury in 1995.
On June 19, 1997, both parties submitted written closing arguments to the court. On March 24, 1998, the magistrate filed a decision in which he made the following relevant findings of fact:
 "[Appellee's] father conveyed to the parties, by joint and survivorship deed, a parcel of land upon which [appellant] and [appellee] built the marital residence.
* * *
 "The [appellee] did not prove by a preponderance of the evidence that there was a mutually understood obligation of repayment, but rather [the court] finds that the property was a gift to both parties equally.
 "Prior to moving into the current marital residence, the parties lived in [appellant's] pre-marital residence, which was sold after the marriage for $7,000, which was used to pay marital debts. This money is found to have been commingled and not [appellant's] separate property.
The magistrate also made additional findings as to the value of various items of marital property, and found that the marital residence had a net equity of $61,500. The magistrate further found that, at the time of the hearing, both parties were fully employed and in good health, and that appellant had earnings of $37,000 in 1996, while appellee earned $61,692 in that same year.
Based on the above-stated findings of fact, the magistrate divided the parties' marital property and awarded each party his or her own retirement accounts. The magistrate then awarded appellee the marital residence and awarded appellant the sum of $27,750 "as her share of the equity in the marital residence, and to equalize the equitable distribution of all marital property." The magistrate ordered appellee to pay appellant spousal support in the amount of $400 per month for one year.
On April 3, 1998, appellee filed objections to the magistrate's report. On April 27, 1998, appellant filed a response to appellee's objections and, on June 5, 1998, appellee filed a supplement to his objections. On June 29, 1998, the trial court filed an order affirming the magistrate's findings, with one significant modification. Specifically, the trial court found that the conveyance of the lot from Kenneth Lowry to the parties was not a gift because the parties had a "mutual obligation and/or agreement" to repay Lowry for the lot. The trial court further found that the value of the lot was $21,700. Accordingly, the trial court reduced appellant's cash award for her share of the marital property from $27,750 to $16,900.
On August 13, 1998, the trial court filed a judgment entry adopting the magistrate's report with the above-stated modifications. On September 4, 1998, appellant filed a timely notice of appeal and on September 14, 1998, appellee filed a notice of cross-appeal.
Appellant/cross-appellee ("appellant") asserts in her first assignment of error that the trial court erred by finding that the parties were obligated to repay Kenneth Lowry $21,700 for the lot.
We will review this assignment of error under a manifest weight standard of review. Accordingly, we must determine whether the trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at the syllabus.
It is well-settled that the essential elements of a valid intervivos gift are: (1) the donor intended to make an immediate gift of the property, (2) the donor delivered the property to the donee or a third person as trustee for the donee and (3) the donor relinquished all dominion and control of the property. Streeperv. Myers (1937), 132 Ohio St. 322, at paragraph on of the syllabus; Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21.
It is undisputed that Kenneth Lowry intended to convey the lot in question to appellant and appellee and did so by delivering a deed, and that at the time the deed was delivered Lowry gave up all control over the lot. However, the trial court specifically found that the lot was not a gift to appellant and appellee because Lowry transferred it to them with the "mutual understanding and/or agreement" that he would eventually be repaid. Thereafter, the trial court found, based on testimony presented at the hearing, that the lot was worth $21,700.
Essential to the formation of an enforceable contract are the elements of a meeting of the minds, an offer, and acceptance.Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. The parties must have a "distinct and common intention which is communicated by each party to the other." McCarthy, Lebit, Crystal Haiman Co.,L.P.A. v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613, 620.
Our review of the record reveals no written evidence of any agreement to pay for the lot. Lowry testified at the hearing that he intended to convey the lot to appellant and appellee jointly; however, he stated that he never told appellant or appellee that he expected to be repaid. Although testimony was presented that Lowry and appellee discussed acquiring land for appellee's use before the parties were married, no evidence was presented that appellant ever participated in those conversations. In addition, appellee testified that, at the time of the hearing, he had not paid his father anything for the lot, even though appellee had received a sizeable cash settlement from his former employer approximately one year earlier. In contrast, the only evidence that Lowry intended to be repaid was Lowry's testimony that Lowry told his wife he expected to be paid, and appellee's testimony that appellee wanted to repay Lowry for the lot someday, after he "got back on his feet."
This court has reviewed the entire record of proceedings that was before the trial court and, upon consideration thereof and the law, finds that the record does not contain any competent evidence to support the trial court's finding that there was a "mutual understanding and/or agreement" that appellant and appellee would repay Lowry for the lot. Accordingly, the trial court erred by finding that appellant and appellee had a joint obligation to pay Lowry $21,700 for the lot, and appellant's first assignment of error is well-taken.
Appellant asserts in her second assignment of error that the trial court erred by reducing the net equity of the marital residence by $21,700, based on its finding that the parties had the obligation to repay Lowry for the lot.
Generally, a trial court has broad discretion, based on the facts of each case, to determine the value of marital assets and to fashion an equitable division of property. James v. James (1995),101 Ohio App.3d 668, 681. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217. However, a trial court abuses its discretion if it did not have sufficient evidence before it to support the value it applies. McCoy v. McCoy (1993),91 Ohio App.3d 570, 578.
Upon consideration of the foregoing and our determination as to appellant's first assignment of error, this court finds that the trial court abused it discretion by reducing the net equity of the marital residence by $21,700 and thereafter reducing appellant's share of the property division by $10,850. Accordingly, appellant's second assignment of error is well-taken.
Appellant asserts in her third assignment of error that the trial court erred by finding that the $7,000 in proceeds from the sale of her mobile home were commingled with marital assets and therefore were not her separate property.
R.C. 3105.171(A)(6) defines "separate property" as:
 "(a) * * * all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage; * * *."
Pursuant to R.C. 3105.171(A)(6)(b), "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." See, also, Hoover v.Hoover (Dec. 18, 1998), Williams App. No. WM-97-031, unreported, citing Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
As previously stated, the trial court has broad discretion in making a property award in a divorce action. Berish v. Berish
(1982), 69 Ohio St.2d 318, 319. However, in addition, "the party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Peck, supra.
The trial court found that appellant used the $7,000 she received from the sale of her mobile home to reduce the parties' marital debts, which included debt incurred from the construction of the marital home. Appellant presented no documentation or other evidence to the court, however, tracing the proceeds of the sale of the mobile home to any specific debts that were paid or any particular assets that were purchased with those funds. In addition, appellee testified that he used his own funds to pay off an outstanding loan on appellant's mobile home before it was sold for $7,000.
Upon consideration of the foregoing, this court finds that appellant did not show by a preponderance of the evidence that the $7,000 in proceeds from the sale of the mobile home could be traced as her separate property. Accordingly, the trial court did not abuse its discretion by finding that the $7,000 had become commingled with the parties' marital property and refusing to award appellant that amount as her separate property. Appellant's third assignment of error is not well-taken.
Upon further consideration of our disposition as to appellant's first three assignments of error, we find that appellant's fourth assignment of error, in which she asserts that the trial court's judgment was contrary to Ohio law, and her fifth assignment of error, in which she asserts that the trial court's judgment was against the manifest weight of the evidence, have become moot and are therefore not well-taken.
Appellee/cross-appellant ("appellee") asserts in his sole cross-assignment of error that the trial court erred by awarding appellant spousal support of $400 per month for one year.
A trial court has broad discretion in determining spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherryv. Cherry (1981), 66 Ohio St.2d 348, 355. Absent an abuse of that discretion, a reviewing court may not substitute its judgment for that of the trial court. Kunkle, supra; Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131.
The purpose of spousal support is to provide for the financial needs of the ex-spouse. R.C. 3105.18(A); Moell v. Moell (1994),98 Ohio App.3d 748, 751. To determine the necessity for and the amount of spousal support, the trial court must consider the fourteen factors provided in R.C. 3105.18(C)(1), including, but not limited to: 1) the relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6) the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) the tax consequences for each party of an award of spousal support, or 9) any other factor that the court expressly finds to be relevant and equitable. Id.
As previously stated, appellant's income in 1996 was approximately one-half that of appellee. Appellant, who is ten years older than appellee, sold her mobile home when the parties moved into their newly constructed residence. Furthermore, the trial court awarded the three thousand two hundred square foot marital residence to appellee, while appellant testified at the hearing that she needed short-term spousal support to enable her to purchase a new home so that she would not have to live in the same apartment complex that she lived in twenty years earlier.
In its August 12, 1998 judgment entry, the trial court made an extensive list of the parties' assets, income and liabilities. The trial court then ordered an equitable division of the parties' assets that has not been challenged on appeal, with the exception of those issues addressed in this opinion. In addition, the trial court stated that, in awarding appellant spousal support in the amount of $400 per month for twelve months, it had considered "the factors related to spousal support, including the ages of the parties, their respective earning capacities, their standard of living established during their marriage, and the additional factors specified under ORC3105.18 * * *."
Upon consideration of the entire record of proceedings before the trial court and the law, this court cannot find that the trial court abused its discretion when it awarded spousal support in the amount of $400 per month for twelve months to appellant. Accordingly, appellee's cross-assignment of error is not well-taken.
The judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is hereby reversed in part and affirmed in part. This case is remanded to the trial court for further proceedings consistent with this opinion. Court costs of these proceedings are assessed equally to appellant and appellee.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J.__________ _______________________________ JUDGE
Richard W. Knepper, J._______ _______________________________ JUDGE
Mark L. Pietrykowski, J._____ _______________________________ JUDGE CONCUR.