DECISION AND JUDGMENT ENTRY
This appeal comes to us from a decree of divorce issued by the Wood County Court of Common Pleas. Because we conclude that the trial court erred in the division of certain property, we reverse in part.
Appellant, Ronald V. Johnson and appellee, Joyce A. Johnson, were married in 1988. In April 1996, appellee filed for divorce. On August 22, 1997, a magistrate conducted a trial on many unresolved issues.
At the trial, the following facts were presented. The parties stipulated that at the time of separation, appellant owned an Olde Discount Account which contained nine hundred sixty shares of Detroit Edison stock, six hundred fifty of the shares were considered pre-marital; the remaining three hundred ten shares were marital property. Appellant also owned a 401(k) account which was worth $123,564, with $20,384 of the assets attributed to pre-marital funds.
The parties further stipulated that appellee owned the residence prior to the marriage; that appellee's Edward Jones IRA account, valued at $7,486, was marital property; that the remainder of the Edward Jones Account (approximately $17,000) was what was left of a personal injury settlement paid to appellee for injuries she sustained in a 1989 car accident. The parties also agreed that a Montgomery Fund account totaling $2,243 at the time of separation was marital property and would be divided equally between the parties.
On February 2, 1998, the magistrate issued his decision. Based upon the testimony and evidence presented,
the court found that appellee was disabled due to injuries received in a 1994 auto accident. As a result, appellee receives disability income of approximately $27,000 per year. Appellant was found to be employed by Detroit Edison and earns approximately $80,000 per year. The court found the following assets to be marital:
 1) Detroit Edison Savings Plan: $103,180 ($123,564 total, less $20,834 pre-marital value attributed to appellant);
2) Appellant's pension plan;
3) Detroit Edison Stock (310 shares);
4) Olde Discount Market Account: $41,312;
 5) Appellant's Olde Discount IRA: $10,375 ($15,871 less $5,496 premarital value attributed to appellant);
6) Appellee's Montgomery Fund: $2,243;
7) Four U.S. Savings Bonds valued at $250 each.
The court awarded to appellee the following as non-marital property:
1) Residence valued at $120,000;
 2) Edward D. Jones Account in appellee's name, $17,511, as proceeds of appellee's personal injury settlement;
 3) Edward D. Jones IRA in appellee's name valued at $7,486, as additional proceeds from appellee's personal injury settlement.
The magistrate also awarded appellee one-half of the marital portion of appellant's Detroit Edison Savings Plan; one-half of the marital portion of appellant's pension plan to be divided by a Qualified Domestic Relations Order ("QDRO"); one-half of the marital portion of the Detroit Edison stock (no less than one hundred fifty-five shares); one-half of the Olde Discount Market Accounts; one-half of the Montgomery Fund; and two U.S. Savings Bonds at $250 each.
Appellant received the corresponding one-half portions of the above noted accounts and the two remaining U.S. Savings Bonds. He was also awarded his premarital interest in the Detroit Edison Savings Plan ($20,834) and pre-marital interest in the Olde Discount IRA ($5,496). Some debts of the parties were to be paid from marital funds prior to their division. Other debts were divided between the parties, with appellee taking the majority of the credit card accounts, the equity line mortgage, and some medical bills.[1] Appellant was to pay the balance of a credit card which included purchases he made. The magistrate awarded appellee $1,000 per month for spousal support, continuing until the death of the parties, appellee's remarriage or cohabitation with a non-related male, or until further order of the court.
Appellant timely filed objections to that decision which, after a lengthy delay, the trial court found not well-taken. On October 30, 1998, a final judgment entry was issued. On December 2, 1998, appellant filed an appeal from that decision.
On December 2, 1998, appellant also moved for relief from judgment in the trial court, based upon allegations that appellee misrepresented her State Teachers Retirement System ("STRS") payments as income rather than pension benefits. On December 22, 1998, this court remanded the case to the trial court for a determination of the Civ.R. 60(B) motion. During these proceedings, appellant requested and was granted a stay as to the division and disbursement of certain funds pending appeal. Ultimately, the trial court denied the Civ.R. 60(B) motion.
In the meantime, the parties also filed cross-motions to show cause; each was found to be in contempt for failing to turn over property as directed in the final divorce decree and given purge conditions. Appellant appealed from that decision as well. We then consolidated all three appeals into the current case. Appellant now sets forth the following eleven assignments of error:
 "ASSIGNMENT OF ERROR I "IT CONSTITUTED ERROR TO AWARD THE MARITAL RESIDENCE TO WIFE IN ITS ENTIRETY AS SEPARATE PRE-MARITAL PROPERTY.
 "ASSIGNMENT OF ERROR II "IT CONSTITUTED ERROR TO AWARD AN IRA WHICH CONTAINED A SPECIFIED AMOUNT OF MARITAL FUNDS TO WIFE IN ITS ENTIRETY AS SEPARATE PRE-MARITAL PROPERTY.
 "ASSIGNMENT OF ERROR III "IT CONSTITUTED ERROR TO AWARD WIFE 155 SHARES OF DETROIT EDISON STOCK TO ONE-HALF OF THE OLDE DISCOUNT MARKET ACCOUNT AND TO FAIL TO MAKE PROVISION FOR PAYMENT OF THE MARGIN DEBT ON THIS BROKERAGE ACCOUNT.
 "ASSIGNMENT OF ERROR IV "IT CONSTITUTED ERROR NOT TO SEPARATELY VALUE THE PASSIVE APPRECIATION ON HUSBAND'S PRE-MARITAL PORTION OF HIS 401(k) AND IRA ACCOUNTS FOR PURPOSES OF COMPUTING WHAT PORTION OF EACH ACCOUNT CONSTITUTED MARITAL PROPERTY.
 "ASSIGNMENT OF ERROR V "IT CONSTITUTED ERROR NOT TO VALUE WIFE'S S.T.R.S. PENSION AND TAKE THE VALUE OF SAME INTO ACCOUNT IN MAKING THE DIVISION OF PROPERTY AND DISTRIBUTIVE AWARD.
 "ASSIGNMENT OF ERROR VI "IT CONSTITUTED ERROR TO DENY APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT.
 "ASSIGNMENT OF ERROR VII "IT CONSTITUTED ERROR NOT TO REQUIRE WIFE TO PAY OVER TO HUSBAND THE FULL AMOUNT OF THE MONTGOMERY FUND THAT HUSBAND WAS AWARDED IN THE FINAL JUDGMENT.
 "ASSIGNMENT OF ERROR VIII "IT CONSTITUTED ERROR TO REQUIRE HUSBAND TO PAY OVER TO WIFE A GREATER AMOUNT FROM HIS 401(K) ACCOUNT THAN THE AMOUNT WIFE WAS AWARDED IN THE FINAL JUDGMENT.
 "ASSIGNMENT OF ERROR IX "THE PROVISIONS OF THE AUGUST 28, 1999 JUDGMENT ENTRY REGARDING DIVISION OF THE 401(K) ACCOUNT ARE NOT SUFFICIENTLY SPECIFIC TO BE ENFORCEABLE.
 "ASSIGNMENT OF ERROR X "IT CONSTITUTED ERROR TO AWARD LIFETIME SPOUSAL SUPPORT TO WIFE.
 "ASSIGNMENT OF ERROR XI "UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE DIVORCE DECREE AS A WHOLE CONSTITUTES AN ABUSE OF DISCRETION."
 I.
Appellant, in his first assignment of error, argues that the trial court erred in awarding the residence to appellee as separate, pre-marital property.
An appellate court reviews a trial court's classification of property as marital or separate under a manifest weight of the evidence standard.Fite v. Fite (Apr. 24, 2000), Brown App. No. CA99-07-022, unreported. Under the manifest weight standard, the factual findings of the trial court are reviewed to determine whether they are supported by competent, credible evidence. Id. The findings of a trial court will be upheld where the record contains some competent evidence to support those findings. Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468; Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 159.
R.C. 3105.17(A)(3)(a)(iii) provides that when either spouse makes a labor, money, or an in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property. Kotkowski v. Kotkowski (May 19, 1995), Portage App. 94-P-0027, unreported; Hansen v. Hansen (Dec. 11, 1992), Lake App. No. 92-L-052, unreported. However, when insufficient evidence is presented to show that an increase in value of pre-marital property is caused by the contribution of the non-owner spouse, then the appreciation is considered non-marital property. See Hansen, supra; Schwarzer v. Schwarza (Jun. 13, 1991), Cuyahoga App. No. 58688, unreported.
In this case, the parties stipulated that the home was pre-maritally owned by appellee. The record shows that the home rose in value from approximately $104,000 in June 1989 (about nine months after the parties married) to $120,000 at the time of the divorce.[2] The parties added landscaping, a pool, and carpeting to the home during the marriage. Nevertheless, appellant could provide no documentation as to the cost or any actual increase in value attributed to these contributions. While we agree that such items may add some value to a home, nothing in the record shows that such items specifically increased the value of the home. On the contrary, the appraiser who testified stated that the home generally was in need of some repair and that the pool did not increase the overall market value.
Additionally, appellant argues that the value of the equity in the home increased due to mortgage payments made during the marriage, decreasing the mortgage from $68,000 to approximately $60,000. However, the parties also encumbered the property with a second mortgage which had a balance of $10,000 at the time of the final hearing. Appellee was ordered to pay this marital debt and also assumed responsibility for payment of the mortgage. Thus, any purported gain in equity due to a reduction of the original mortgage is offset by the additional encumbrance owed on the residence. Therefore, since the record contains some, competent, credible evidence in support of the trial court's classification of the home as non-marital property, such determination is not against the manifest weight of the evidence.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, contends that the trial court erred in awarding to appellee her IRA account (which contained marital funds) as separate, pre-marital property. We agree.
R.C. 3105.171(C) provides that "marital property" shall be divided equally, unless the court determines that such a division would inequitable. In other words, a court may award marital property to one of the parties if equity requires such a division.
Although some confusion existed during the proceedings as to the source of the funds in appellee's Edward D. Jones IRA account, the parties ultimately stipulated that this account was not comprised of funds from the personal injury settlement. Rather, the account was created using marital funds. The court, however, did not determine the property was marital and then award the account to balance the equities between the parties. Rather, the court mistakenly awarded the IRA to appellee as being separate "non-marital" property. Therefore, the trial court erred in its award of the entire Edward D. Jones IRA to appellee.
Accordingly, appellant's second assignment of error is found well-taken.
 III.
Appellant, in his third assignment of error, claims that the trial court erred in awarding one-half of the Detroit Edison stock and one-half of the Olde Discount Market Account ("Market Account") to appellee. Appellant attacks the award of the Olde Discount funds on a variety of fronts.
A trial court's division of marital property will not be reversed absent an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130; Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. An abuse of discretion "connotes more than a mere error of law; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
In this case, our review of the record discloses several actions of the trial court that are problematic in the distribution of the Market Account. First, the parties stipulated that six hundred fifty shares of the Detroit Edison stock which were in the account were appellant's pre-marital assets. Second, despite this stipulation, the court awarded one-half of the value of the entire account to appellee which included appellant's six hundred fifty Detroit Edison shares. Third, the trial court also separately awarded appellee one hundred fifty-five shares, one-half of the marital portion, of the Detroit
Edison stocks which were included in the Market Account. Finally, we note that in making this separate award the court failed to recognize that those shares were encumbered by margin debt.[3]
Therefore, in light of the trial court's failure to honor the parties' stipulations concerning the Detroit Edison stock, its failure to consider the margin debt, and its de facto double award to appellee of her one hundred fifty-five shares, we conclude the court's division of the Market Account was unreasonable.
Accordingly, appellant's third assignment of error is well-taken.
 IV.
Appellant, in his fourth assignment of error, claims that the trial court erred in failing to separately value the passive appreciation of appellant's 401(k) and IRA accounts to determine the proportion of marital property in each account.
R.C. 3105.171(A)(4) states that "passive income" includes income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.
In this case, appellant claims that, although the trial court gave him credit for his pre-marital contributions to both the 401(k) and the Olde Discount IRA, it should have "computed" the passive appreciation of the premarital amounts. However, appellant presented no evidence or calculations to demonstrate what that appreciation value would be. Without such evidence, any calculation by the court would have been speculative. Therefore, in the absence of any evidence to establish the amount of any passive appreciation, we cannot say that the trial court erred in omitting such calculation.
Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
We will address appellant's fifth and sixth assignments of error together. Appellant, in his fifth assignment of error, contends that the trial court erred in failing to consider the value of appellee's STRS pension when determining the property division. Appellant claims that appellee's disability payments should be classified as marital "pension" benefits which would be subject to division.
In Ohio, the fair and equitable division of pension or retirement benefits in a divorce matter is left to the trial court's discretion.Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, paragraph one of the syllabus. Pension or retirement benefits earned during the marriage are marital assets and a factor to be considered in the just division of property.Id. at 178. However, social security benefits, disability retirement pay, and railroad benefits are not marital assets. Id. at 178, fn. 3. See, also, Bauser v. Bauser (1997), 118 Ohio App.3d 831 (disability retirement income from PERS not marital property). Disability pension benefits cannot be considered marital property "unless they are accepted in lieu of old-age retirement pay, in which event they are marital property to the extent that such retirement pay value is included in the disability pension benefit." Bauser, supra, at 835.
In this case, appellee receives income as a result of her disability, not as a result of her retirement. There was no evidence in the record demonstrating that any of the disability pension income received by the appellant was provided in lieu of old-age retirement pay. Furthermore, the income was considered when determining the overall financial resources of the parties for the purposes of spousal support. Therefore, the trial court did not err in treating appellee's disability payments as income rather than valuing them as a marital property.
Appellant, in his sixth assignment of error, argues that the trial court erred in denying his motion for relief from judgment. Appellant's Civ.R. 60(b) motion was based upon the "mistake" that the court did not consider appellee's disability income as marital property subject to division. Based upon our disposition of appellant's fifth assignment of error, we conclude that appellant's argument is without merit.
Accordingly, appellant's fifth and sixth assignments of error are not well-taken.
 VI.
We will next address appellant's eighth assignment of error. In that assignment, appellant claims that the trial court erred in requiring him to pay over to appellee a greater amount from the 401(K) account than what was awarded in the final judgment. Appellant claims that the trial court erred in valuing the property from the time of the distribution, rather than the time of the final hearing.
Marital property includes various types of property acquired "during the marriage." R.C. 3105.171(A)(3). "During the marriage" is defined as follows:
 "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2).
See Berish v. Berish (1982), 69 Ohio St.2d 318, 321 (to do equity, a trial court must be permitted to utilize alternative valuation dates where reasonable under the facts and circumstances presented in a particular case). See, also, Gullia v. Gullia (1994), 93 Ohio App.3d 653,666, appeal dismissed (1994), 70 Ohio St.3d 1409.
In this case, the trial court determined that because appellant's request for a stay delayed appellee's receipt of her share of the accounts, equity required that appellee receive one-half of the Detroit Edison Savings Plan as valued on the date it was actually distributed. In our view, property, such as a stock portfolio, which fluctuates daily in value due solely to reasons beyond the control of either party should be valued at the time it is actually divided according to the trial court's order. Ideally, such accounts should be divided and distributed as soon as the decree is issued. As a practical matter, however, such an immediate division could rarely be effectuated.
As the trial court noted in this case, the increase in the Detroit Edison account was partially attributable to appellee's portion of that account.[4] Thus, to permit appellant to keep the increase would result in an unjust windfall to him. Based on the record, we cannot say that the trial court abused its discretion in giving appellee her share based upon the value of the account at the time of actual distribution.[5]
Accordingly, appellant's eighth assignment of error is not well-taken.
 VII.
Appellant, in his seventh assignment of error, contends that the trial court erred in not requiring appellee to pay appellant one-half the value of the Montgomery fund as listed in the final judgment.
As we previously determined, a trial court may value property at a date required by equitable considerations. See Berish v. Berish, supra; Gulliav. Gullia, supra.
In this case, the court awarded one-half of the Montgomery Fund to each party. According to the record, this fund was a jointly held account.[6]
Thus, as soon as the final decree was issued, either party was free to remove his or her half of the money in the account. Nonetheless, neither party withdrew funds from this account.
Although appellee was found to be in contempt for failing to "distribute" one-half of this account to appellant, no evidence was presented that she prevented appellant from withdrawing his portion or that she removed any of the funds. In this case, any decrease in the value of the fund was caused solely by the fluctuation in the stock market and was not controlled by either party. In our view, if appellant's share is less because of the account's decrease in value, the loss was caused by his own delay in collecting his portion of this account. Therefore, we cannot say that the trial court abused its discretion in valuing the Montgomery Fund at the time of distribution, rather than from the date of the hearing.
Accordingly, appellant's seventh assignment of error is not well-taken.
 VIII.
Appellant, in his ninth assignment of error, argues that the trial court's judgment entry as to the division of appellant's 401(k) account were insufficiently specific to be enforceable.
Determinations as to the meaning of the terms of property division may be made by a domestic relations court pursuant to its authority to interpret and enforce its own judgments and orders. See In re Dissolutionof Marriage of Seders (1981), 42 Ohio App.3d 155; R.C. 3105.65(B).
In this case, the trial court clearly and specifically awarded appellee "one-half of the marital portion of [appellant's] Detroit Edison Savings Plan." The plan administrator's requirement that a QDRO be filed to enforce the court's division did not change or affect the division. Since the plan was in appellant's name, it was appellant's responsibility to carry out that order doing whatever was necessary to complete the division. The initial effort to get information and to divide this account was expended, to no avail, by appellee and her counsel. However, appellant did nothing to expedite the division, seeking instead a stay on its distribution. Therefore, we cannot say that the trial court's order for division of the 401(k) plan was so unclear or unspecific as to be unenforceable.
Accordingly, appellant's ninth assignment of error is not well-taken.
 IX.
Appellant, in his tenth assignment of error, contends that the trial court erred in ordering lifetime spousal support to appellee.
A trial court has broad discretion in determining spousal support.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. Absent an abuse of that discretion, a reviewing court may not substitute its judgment for that of the trial court.Kunkle, supra; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. As we previously noted, an abuse of discretion "connotes more than a mere error of law; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The primary purpose of spousal support is to provide for the financial needs of the ex-spouse. R.C. 3105.18(A); Moell v. Moell (1994),98 Ohio App.3d 748, 751. To determine the necessity for and amount of spousal support, the trial court must consider the fourteen factors provided in R.C. 3105.18(C)(1), including, but not limited to: 1)the relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6) the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) the tax consequences for each party of an award of spousal support, or 9) any other factor that the court expressly finds to be relevant and equitable. Id.
In the present case, the marriage lasted for a relatively short duration (eight and one-half years) and appellee has a higher degree of education than appellant. However, appellee, fifty years old at the time of the hearing, is in poor health both mentally and physically. Her health condition is due to the residual injuries from the auto accident, as well as other debilitating medical conditions.[7] Appellee's income is limited to what she receives from her disability payments, since she can no longer work. Appellee testified that her health insurance does not cover all of her medical costs, resulting in additional out-of-pocket medical expenses.
Appellant, on the other hand, is ten years younger than appellee and in relatively good health. He has a much higher current income (earning more than $87,000 in 1996), and certainly a better outlook for increasing his earning capacity than appellee. Additionally, the couple's standard of living during the marriage and appellee's debts, including a home mortgage and equity line, favor an award of spousal support.
While we agree that lifetime spousal support should be awarded only where necessary, in this case, there was no evidence presented to establish appellee's future recovery and ability to return to work. In fact, the evidence points to the opposite conclusion: that her health will continue to worsen as time goes by and she will never return to work. Therefore, because of her medical conditions, her inability to increase her income to meet her own needs, and the highly disparate incomes of the parties, we cannot say that the trial court abused its discretion in awarding appellee lifetime alimony of $1,000 per month. Should appellee's condition improve or at such time as she begins to receive her portion of appellant's pension, appellant may return to the trial court to determine whether a reduction in spousal support is appropriate.
Accordingly, appellant's tenth assignment of error is not well-taken.
 XI.
Appellant, in his eleventh assignment of error, claims the divorce decree is unfair as a whole and the trial court abused its discretion in fashioning its judgment.
Upon consideration of our disposition of the other assignments of error, we cannot say that the entire divorce decree is unfair. We have addressed those portions of the decree which need correction, but find that the remainder was properly ordered. Accordingly, appellant's eleventh assignment of error is not well-taken.
The judgment of the Wood county Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This case is remanded for proceedings consistent with this decision. Court costs of this appeal are divided equally between the parties.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] We note that the residence also has a first mortgage in both parties names with a balance of approximately $60,000. This mortgage was not specifically assigned to either party, but appellant is apparently assuming this debt, having been awarded the home. Upon remand, this debt should be designated in the judgment entry.
[2] Although appellant provided tax records to attempt to show different valuations, the court chose the appraiser's current appraisal of $120,000 to be the most accurate. Tax appraisals may or may not be an accurate indicator of property value. Here, other evidence based upon actual appraisals was offered and, in our view, represented the more accurate value.
[3] This is understandable since the presentation of these assets was somewhat confusing during the original hearings. No testimony as to the margin debt expense was offered, even though the exhibits show that this was the method utilized to purchase the stocks.
[4] Although appellant contended that he had made additional contributions to this account, he could not verify or put forth any evidence of those contributions when given the opportunity at the hearing. Therefore, the court properly did not give any credit to him for any alleged contributions.
[5] We note that the value that the parties actually receive from these assets remains to be determined since it has been more than one year from the time of the motions to show cause.
[6] The trial court improperly designated this account as appellee's in the final divorce decree, which again may have been caused by the confusing testimony and evidence presented at trial.
[7] Appellee testified that she has had multiple surgeries, has a brain lesion, has a degenerative spine condition, and suffers from severe headaches and constant neck and shoulder pain. She takes five different medications for these conditions and has a morphine pump device which automatically puts medication directly into her neck.