OPINION
{¶ 1} Defendant-appellant Alexis Bordenkircher (Wife) appeals from a Jefferson County Common Pleas Court divorce decree ordering plaintiff-appellee Kenneth Brown (Husband) to pay to her $400 per month in spousal support for two years. Four issues are raised in this appeal. The first issue is whether the trial court made a mathematical error in computing the duration of spousal support. The second issue is whether "taking up residency," which the trial court used as a lesser standard than cohabitation for purposes of termination of spousal support, is void for vagueness. Third, whether the trial court abused its discretion by holding that Husband's support for the parties' two dogs was voluntary. Lastly, whether the trial court erred when it failed to make Husband reimburse Wife for the $600 she expended on airplane tickets. For the reasons expressed below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} The parties were married on August 20, 1994. No children were the product of this relationship. Husband filed for divorce on June 27, 2005. Wife filed her answer on August 18, 2005. A hearing was held on September 9, 2005.
 {¶ 3} At this hearing, the court was informed that the parties reached an agreement on all issues except spousal support. (Tr. 3). The agreement, concerning the net settlement, was read into the record. (Tr. 3-5). The settlement agreement is as follows.
 {¶ 4} The parties agreed they are incompatible. (Tr. 3). They agreed that the marital residence would be sold and Husband would receive the first $30,000 proceeds of the sale. (Tr. 3). The remainder would be divided equally between the parties. (Tr. 3). During the marriage, a Honda motor vehicle was purchased. (Tr. 3). Husband agreed to pay the remaining payments on this vehicle, which will end in November 2006. (Tr. 3). Husband also agreed that the vehicle would belong to Wife. (Tr. 3). In addition, he agreed to pay the insurance on this vehicle until November 2006. (Tr. 4). As to bank accounts (held in either joint names or separate names) totaling $17,700, the parties agreed that $8,600 of this amount would be Wife's, and the remainder, $9,100, would be Husband's property. (Tr. 4). The unsecured line of credit in the amount of $7,273 would be the sole responsibility of Husband. (Tr. 5). As to the credit card debt that was acquired during the marriage, Husband was responsible for $46,318, while Wife was responsible for $3,000. (Tr. 5, 9). As the parties agreed and the trial court stated, the marital property was not split equally. (Tr. 7).
 {¶ 5} On September 16, 2005, the trial court issued its order of spousal support. The trial court ordered Husband to pay Wife $400 per month for a period of two years. It then stated:
 {¶ 6} "Husband has already been supporting Wife for nine months during the pendency of this action and an additional two years on top of the nine months he has in seems ample for what amounts to a ten year marriage. Spousal support shall terminate upon the death of either party or upon Wife's taking up residence with an adult male non-relative.[1]
 {¶ 7} "* * *
 {¶ 8} "Husband shall owe no responsibility what-so-ever to Wife's dogs. Any amount he pays, if any, to support the dogs shall be voluntary on his part."
 {¶ 9} On October 6, 2005, the trial court issued the Judgment and Decree of Divorce. In that entry, it set forth the disbursement of marital property. Wife appeals from those orders raising four assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "THE COURT COMMITTED A SUBSTANTIVE ERROR BY SUBMITTING AN [SIC] MATHEMATICAL ERROR IN THE SPOUSAL SUPPORT ORDER FILED ON SEPTEMBER 16, 2005."
 {¶ 11} The spousal support order filed on September 16, 2005, stated that Husband had been supporting Wife for the nine months during the pendency of the divorce action. It ordered that an additional two years on top of that nine months is an ample amount of time for spousal support given the marriage lasted approximately ten years.
 {¶ 12} Wife argues that the trial court's factual statement that Husband has been supporting Wife for nine months during the pendency of the divorce is incorrect.[2] As Wife correctly points out, the divorce proceedings only lasted three months. Wife contends that the trial court's misstatement of the number of months the divorce proceeding lasted amounts to a mathematical error. She further insists that it is a mathematical error of such a substantial nature that the case must be reversed and remanded back to the trial court for clarification.
 {¶ 13} In awarding spousal support, a trial court enjoys broad discretion to do what it finds equitable based on the facts and circumstances of each particular case. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355; Tedrow v. Tedrow, 11th Dist. No. 2002-T-0064, 2003-Ohio-3693, ¶ 8. Reliance on inaccurate information in making a spousal support award will not always constitute an abuse of discretion. See Ehni v. Ehni (Apr. 25, 1995), 10th Dist. No. 94APF10-1530; Lancione v. Lancione (Sept. 20, 1994), 10th Dist. No. 94APF03-308. Nonetheless, an abuse of discretion may be shown where a substantial error occurs due to the mathematical miscalculation. See Gockstetter v. Gockstetter
(June 23, 2000), 6th Dist. No. E-98-078.
 {¶ 14} Wife characterizes the trial court's error as a mathematical mistake. We disagree with that characterization.
 {¶ 15} Typically, when an appellate court reviews a mathematical mistake, the mistake concerns the trial court miscalculating the amount of a party's income. Cyr v. Cyr, 8th Dist. No. 84255, 2005-Ohio-504 (finding trial court erred in calculating relative income of parents for purposes of child support); Barron v. Barron, 5th Dist. No. 2002CA00239, 2003-Ohio-649 (finding trial court overstated a party's income by 16% because of miscalculating biweekly paychecks when it computed two months income from 5 pay checks); Ott v. Ott, 12th Dist. No. CA2001-09-207, 2002-Ohio-2067 (finding trial court failed to consider all income available for purpose of spousal support);Smith v. Smith (Jan. 12, 2001), 6th Dist. No. H-99-029;Gockstetter, 6th Dist. No. E-98-078. That is not what occurred in the matter at hand. Instead, the trial court misstated the duration of the pending divorce.
 {¶ 16} This type of mistake is not a mathematical error; rather it is a misstatement of fact and/or typographical error. Accordingly, unless the mistake creates an ambiguity that requires clarification on the part of the trial court, there is no reason to reverse the decision.
 {¶ 17} The trial court, in its judgment entry, states the following:
 {¶ 18} "Husband had agreed to pay $400.00 per month for two years which sum is probably excessive in light of his overall financial picture. Although the Court does not see that much financial ability to pay it will take Husband's word for it.
 {¶ 19} "Husband shall therefore pay Wife the sum $400.00 per month for a period of two (2) years. Husband has already been supporting Wife for nine months during the pendency of this action and an additional two years on top of the nine months he has in seems ample for what amounts to a ten year marriage." 09/16/05 J.E.
 {¶ 20} The trial court clearly indicated that it thought $400 per month for two years was excessive given Husband's financial picture. That statement alone provides indication that the trial court ordered spousal support for the duration of only two years, not two years and six months as Wife suggests. Thus, there is no ambiguity in the trial court's order. It is clear that spousal support was awarded for a duration of two years from the date of the judgment entry. This assignment of error has no merit.
 SECOND ASSIGNMENT OF ERROR {¶ 21} "THE COURT ABUSED ITS DISCRETION BY ARBITRARILY CREATING A NEW TERM AND STANDARD FOR CO-HABITATION."
 {¶ 22} The trial court, instead of using the cohabitation standard for termination of spousal support, uses a "taking up residence" standard. 09/16/05 J.E. The trial court explains that "`Take up residency' is less than `cohabitation.'" 09/16/05 J.E. ftnt. 1.
 {¶ 23} Wife argues that this is a new standard, that it has never existed as law before, and it has not been defined or enacted by the legislature. Thus, she argues this "taking up residency" standard is void for vagueness. She states that it is unclear what this new standard means.
 {¶ 24} The Supreme Court of Ohio, in Buckley v. Wilkins,105 Ohio St.3d 350, 2005-Ohio-2166, recently set forth the following guidelines for determining whether a statute is unconstitutionally vague:
 {¶ 25} "`The due process clause of the Constitution provides the foundation for the void for vagueness doctrine.' ColumbiaNatural Resources, Inc. v. Tatum (C.A.6, 1995), 58 F.3d 1101,1104. Laws must `give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and laws must also `provide explicit standards' for the police officers, judges, and jurors who enforce and apply them. Grayned v. Rockford (1972), 408 U.S. 104, 1081-09."
 {¶ 26} A void for vagueness argument is raised when a person is challenging a statute on due process grounds. State v.Tanner (1984), 15 Ohio St.3d 1, 3. See, also, Connally v.General Constr. Co. (1926), 269 U.S. 385. In this case Wife is not challenging any statute. Thus, her "void for vagueness" argument is misplaced and fails.
 {¶ 27} Furthermore, even when looking to the heart of her "void for vagueness" argument — that the "taking up residency" standard has no clear meaning and it is unclear what action would violate the standard — her argument still fails. However, the reason for this failure is due to the issue's lack of ripeness.
 {¶ 28} "Ripeness `is peculiarly a question of timing.'Regional Rail Reorganization Act Cases (1974), 419 U.S. 102, 140." State ex rel. Elyria Foundry Co. v. Industrial Comm. ofOhio (1998), 82 Ohio St.3d 88. Therefore, in order "for a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties." State v.Stambaugh (1987), 34 Ohio St.3d 34, 38, citing Burger BrewingCo. v. Liquor Control Comm. (1973), 34 Ohio St.2d 93, 97-98. Typically, a claim is not ripe if the claim rests upon "future events that may not occur as anticipated, or may not occur at all." Texas v. United States (1998), 523 U.S. 296, 300.
 {¶ 29} Here, it is unclear from the trial court's journal entry what conduct on Wife's part would constitute "taking up residency." While the footnote indicates that it is something less than cohabitation, it is unclear what the something less would be. Thus, the term is ambiguous. It is this ambiguity that allows us to the affirm the decision. "When an ambiguous term * * * is incorporated into a divorce decree, the court that issued the decree has broad discretion in clarifying ambiguous language `by considering not only the intent of the parties but the equities involved.' In re Dissolution of Marriage of Seders
(1987), 42 Ohio App.3d 155, 156." Dickerson v. Dickerson
(1993), 87 Ohio App.3d 848, 851. Or in other words if or when Husband requests termination of spousal support, the trial court at the time will have the opportunity to interpret the phrase "taking up residency." Since we can only guess as to what the trial court meant by "taking up residency," the appeal of this issue is not ripe.
 {¶ 30} That said, to provide some guidance to the trial court if it does get the opportunity to interpret "taking up residency," we must note that if "taking up residency" merely means to share the same living space with a male who was not related to Wife, then the decree would contradict clearly established law regarding the termination of spousal support.
 {¶ 31} The term of art that has been used to determine termination of spousal support for decades is "cohabitation." Cohabitation is defined by case law and requires sharing of familial or financial responsibilities and consortium. Coe v.Coe, 9th Dist. No. 03CA0104-M, 2004-Ohio-3845. It usually signifies, "the functional equivalent of a marriage." Piscionev. Piscione (1992), 85 Ohio App.3d 273, 275. "The purpose of a cohabitation clause is to prevent inequity in two situations involving spousal support. The first situation occurs when an ex-spouse would receive support from two sources, each of whom is either legally obligated or voluntarily undertakes the duty of total support. * * * The second situation arises when the ex-spouse who is receiving spousal support uses such payments to support a nonrelative member of the opposite sex." Moell v.Moell (1994), 98 Ohio App.3d 748, 751-752 (internal citations omitted).
 {¶ 32} As the Tenth Appellate District has noted:
 {¶ 33} "[I]solated acts of sexual intercourse, unaccompanied by other aspects of living together, would not constitute cohabitation, but that, on the other hand, cohabitation can be based entirely upon acts of living together without sexual relations. Cohabitation requires some regularity of functions as would a husband and wife, either sexually or otherwise." Fullerv. Fuller (1983), 10 Ohio App.3d 253, 254 (internal citation omitted).
 {¶ 34} Merely living with someone is not a legitimate rationale for terminating spousal support. Moell,98 Ohio App.3d at 752. "Without a showing of support, merely living together is insufficient to permit a termination of alimony."Thomas v. Thomas (1991), 76 Ohio App.3d 482, 485, citingBussey v. Bussey (1988), 55 Ohio App.3d 117.
 {¶ 35} This court has even explained, quoting Taylor v.Taylor (1983), 11 Ohio App.3d 279,
 {¶ 36} "While judicial interpretation of the word in the instant context appears to be a matter of first impression in this state, the purpose sought to be achieved by the use of such language is obvious: to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support. The public policy behind this purpose is not questioned here, nor in our opinion could it be. If the obligation of divorced husband A to support divorced wife B is terminated by the remarriage of B to C, it is because the law recognizes the role of marriage in formalizing the support obligations of B and C in which A no longer plays a role. If instead of marrying C, B chooses to `cohabit' with him, the law, as reflected in the language of the decree, will assume the same consequences to follow as in the case of a ceremonial marriage, and for the same reason." Knowlton v. Knowlton (Jan. 11, 1994), 7th Dist. No. 712.
 {¶ 37} Thus, the termination of spousal support requires something more than just sharing a living space with another. That said, while the term "cohabitation" has been clearly defined in case law, there is nothing particularly sacred (judicially speaking) in the use of that specific word. As such, we would not typically reverse a judgment simply because a new or unusual phrase is used to describe a legal concept. The trial court, when given the chance, could interpret "taking up residency" in a manner consistent with the reasoning that has gone into defining the term "cohabitation," and may perhaps have a legitimate reason for terminating spousal support upon a lesser standard than cohabitation. If there is a request at some future date to terminate spousal support due to Wife's "taking up residency" with someone, then the trial court will be able to explain at that time if "taking up residency" is consistent with the principles set forth above. This assignment of error has no merit.
 THIRD ASSIGNMENT OF ERROR {¶ 38} "THE COURT ABUSED ITS DISCRETION BY DISREGARDING THE SEPARATION AGREEMENT READ INTO THE RECORD AND AGREED TO BY THE PARTIES. APPELLEE ACCEPTED RESPONSIBILITY FOR PAYMENT OF MEDICAL EXPENSES FOR THE PARTIES' PETS AND THE COURT CHANGED THE AGREEMENT OF THE PARTIES IN ITS ORDER."
 {¶ 39} The issue in this assignment of error arises from the following statement made in the trial court's September 16, 2005 journal entry:
 {¶ 40} "Husband shall owe no responsibility what-so-ever to Wife's dogs. Any amount he pays, if any, to support the dogs shall be voluntary on his part." 09/16/05 J.E.
 {¶ 41} The separation agreement was testified to at the hearing. Portions of the separation agreement were read into the record, however, those portions dealt with the net settlement, not with support for the parties two 11-12 year old cocker spaniel dogs. As the settlement agreement was not offered as an exhibit, this court has only the testimony to determine what the parties agreed to concerning the dogs.
 {¶ 42} The testimony concerning support for the dogs is as follows:
 {¶ 43} "Q. [Wife's attorney] Was there any understanding between the two of [sic] that you would take care of their medical expenses?
 {¶ 44} "A. [Husband] I will. I have been.
 {¶ 45} "* * *
 {¶ 46} "By Mr. Pate [Husband's attorney]: Q. And these dog expenses. At some point if it becomes too much are you going to have the sole discretion on putting these dogs asleep?
 {¶ 47} "A. [Husband] I think it should be our decision because they're our dogs. I mean we've already talked about the pacemaker and decided it really isn't feasible for a dog of that age.
 {¶ 48} "Q. So these are medical expenses that you have just agreed to accept.
 {¶ 49} "A. They have to be within reason, yes. As far as their annual checks, shots, their necessary medications, yes, that's fine, I have no problem with that." (Tr. 33-34).
 {¶ 50} Without knowing the exact terms that the parties agreed to concerning support for the dogs, it is hard, given the testimony, to find that the trial court abused its discretion in holding that Husband's obligation to the dogs is voluntary. Husband's indication that he would pay necessary expenses within reason shows that he would voluntarily pay what he thought was reasonable. His testimony shows that necessary medications and annual checkups, he would provide; however, a pacemaker was not one of the things he would pay for.
 {¶ 51} Given the testimony, we cannot find that the trial court abused its discretion. This assignment of error has no merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 52} "THE COURT ERRED BY REFUSING TO ADMIT EVIDENCE REGARDING THE $600 CHARGE FOR THE AIRLINE TICKETS."
 {¶ 53} In the final assignment of error, Wife finds fault with the trial court's order requiring her to pay the full amount of the $600 charge on her credit card for airline tickets that were bought but not used by the parties. The airline tickets were purchased by Wife on her credit card (the credit card with $3,000 of debt on it) for the purpose of being used for a cruise Husband had booked for the two of them. The divorce proceedings then occurred and Husband canceled the cruise. He obtained a full refund. However, the airline tickets purchased by Wife were nonrefundable.
 {¶ 54} Wife insists that she should not be burdened with paying the $600. She contends that the trial court erred when it would not allow testimony concerning this debt.
 {¶ 55} Wife is incorrect that the trial court would not allow testimony concerning the $600 for airfare. The trial court heard ample testimony concerning this debt. While at one point it stopped Husband's counsel from asking further questions concerning this debt, this does not amount to reversible error.
 {¶ 56} The testimony is undisputed that this debt was marital debt and it was on Wife's credit card. Furthermore, testimony reveals that Husband acquired all but $3,000 (Wife's credit card) of the marital debt. The trial court stated and the record discloses that the net settlement of marital property is "grossly disproportionate grossly favoring Defendant [Wife] and grossly disfavoring Plaintiff [Husband]." 09/16/05 J.E. This is shown by the fact that Husband assumed almost $47,000 of marital credit card debt, plus a little over $7,000 debt on a line of credit. He agreed to pay the remainder owed on the marital vehicle, which would belong to Wife, and to pay the insurance premiums until the vehicle was paid off. As to other property, the marital home, the proceeds of its sale (minus the first $30,000, which was Husband's separate property put into the home prior to marriage), were split equally between Husband and Wife. The bank accounts were spilt almost equally (Husband received $500 more than Wife). Thus, the disbursement of property was very unequal.
 {¶ 57} A trial court enjoys broad discretion in crafting an equitable division of marital property in a divorce proceeding. R.C. 3105.171(C)(1); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295;Cherry, 66 Ohio St.2d at 355. Despite this broad discretion, Ohio law requires the court to divide marital and separate property equitably between the parties, which in most cases requires an even split. R.C. 3105.171(B), (C)(1).
 {¶ 58} Consequently, considering the trial court's discretion and the uneven disbursement of marital property, no abuse of discretion resulted from the trial court's failure to make Husband acquire the $600 debt for airplane tickets or for even failing to split this money between the parties. Thus, for that reason this assignment of error lacks merit.
 {¶ 59} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs in judgment only.
[1] Trial court's judgment entry contains a footnote which states, "`Take up residency' is less than `cohabitation.'"
[2] It is noted that Wife does not argue that the duration and amount of spousal support was an incorrect number. Rather, her whole argument is based upon the trial court's incorrect statement that the divorce action lasted nine months.