TAYLOR, APPELLEE, *v.*
TAYLOR, APPELLANT.

(No. C-820972—Decided October 26, 1983.)

*Ms. Amy Schweer Boland,* for appellee Denese A. Taylor.

*Messrs. Holbrock, Jonson, Bressler & Houser* and *Mr. Michael D. Shanks,* for appellant Michael T. Taylor.

PALMER, P.J. The relevant facts in this appeal are those determined by the referee of the domestic relations court after hearings on the matters in question, no transcript for the proceedings having been made. These findings include, in relevant part, the following:

"1. Parties divorced per Decree dated January 22, 1981.

"2. Paragraph 13 [*i.e.,* of the divorce decree] orders Plaintiff to pay Defendant $6,276.00 no later than the fifth anniversary date of this final decree or upon * * * remarriage or co-habitation within the five year period * * *

"3. Defendants [*sic*] claims that Plaintiff is 'co-habitating' with one Vincent Brown."

The referee continued his findings with a summary of the evidence dealing with the relationship of Brown with the plaintiff, concluding as a matter of law that:

"1. This court finds that cohabitation as it is used in the instant case means intercourse together as Husband and Wife (citation omitted).

"* * *

"4. There is nothing in the evidence before this Court that substantiates that Plaintiff is living with Mr. Brown in a manner so described.

"5. Defendant's motion for contempt is overruled, to which he excepts."

The defendant asserts, in his single assignment of error, that the trial court erred in approving and adopting the report of the referee, "thereby accepting the definition of 'cohabitation' as meaning

'intercourse together as husband and wife.' '' We agree.

The language in Paragraph 13 of the divorce decree, referred to by the trial court in its findings, adds "cohabitation" to the more customary events of death and remarriage as events triggering the acceleration of, or release from, an obligation provided for in the divorce decree. This language appears to have been developed by the domestic relations court in recent years to forestall a perceived tendency on the part of a former spouse to avoid the consequences of remarriage by instead engaging in a meretricious relationship with another. Given such conditions, a divorced wife, for instance, whose periodic alimony payments would cease on remarriage, would instead choose to live together with her paramour without benefit of clergy, and continue to claim her alimony. In order to prevent this state of affairs, the concept of "cohabitation" was added to that of "remarriage."

While judicial interpretation of the word in the instant context appears to be a matter of first impression in this state,[1] the purpose sought to be achieved by the use of such language is obvious: to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support. The public policy behind this purpose is not here questioned, nor in our opinion could it be. If the obligation of divorced husband A to support divorced wife B is terminated by the remarriage of B to C, it is because the law recognizes the role of marriage in formalizing the support obligations of B and C in which A no longer plays a role. If instead of marrying C, B chooses to "cohabit" with him, the law, as reflected in the language of the decree, will assume the same consequences to follow as in the case of a ceremonial marriage, and for the same reason.

Indeed, this could be the only legitimate purpose of the language in question. The domestic relations court is a court of law, just as is this court; it is not an ecclesiastical tribunal to enforce moral standards uncodified by statute. Sexual relationships, licit or otherwise, are not its concern, except as they may bear on an issue germane to the court's jurisdiction.[2] In this case, the germane issue before the trial court was whether the gentleman in question, by voluntarily undertaking certain aspects of a continuing relationship with the plaintiff, thereby assumed obligations equivalent to those arising from a ceremonial marriage.[3] A sexual relationship, since it customarily follows any such undertaking, would be strong evidence of his having done so, but neither it nor its absence would necessarily be *dispositive* of the issue. As marriage partners may mutually consent to a cessation of a sexual relationship, or as age or illness may render its practice impossible, all without disturbing the obligations of the contract, so too may it be the case with cohabitation. Sexual intercourse, in short, is not the *sine qua non* of the "cohabitation" intended by the instant decree, as the referee found and the trial

---

[1] But, see, *State* v. *Connoway* (Jefferson C.P. 1816), Tappan's Reports 58.

[2] Thus, to the legal issues of "adultery" or "impotency" as grounds for divorce (R.C. 3105.01), evidence of sexual intercourse, or its absence, bears an obvious and inseparable role. It may, arguably, bear in other areas, *e.g.*, custody of children, but only as evidence tending to establish another issue of primary concern.

[3] The functional equivalence of "cohabitation" and "marriage" is demonstrated by a number of lexicographers, among whom the following is typical:

"Cohabitation: Act or state of dwelling together, esp. as or as if husband and wife. * * *" Webster's Second New International Dictionary (1959).

court approved. It may be a persuasive indicium of cohabitation, but it is not everything.

Since the referee and the trial court so unequivocally found sexual intercourse to be a necessary condition of cohabitation, we conclude the existence of error as a matter of law, and since the referee's recommendation to the trial court and the trial court's adoption of such recommendation were expressly predicated on such error, we further find the error to have been prejudicial. We note, parenthetically, that the referee's findings of fact, particularly those noted in Paragraphs 5, 6 and 11, might well have been a sufficient predicate, *when added* to his finding with respect to the absence of sexual relations, to bottom his conclusion that the parties were not cohabiting within the meaning of the decree. The matter is not, however, so free of debate that we elect to make that determination here pursuant to App. R. 12(B). This is particularly true when we have not had the benefit of a transcript of the proceedings before the referee. Rather, we conclude that the cause should be remanded to the trial court for a determination of the issue of cohabitation absent reliance on the *conclusive* nature of a sexual relationship between the parties.

The assignment of error is well-taken, the order of the trial court is reversed, and the cause is remanded for further proceedings consistent with this decision.

*Judgment reversed and
cause remanded.*

SHANNON and DOAN, JJ., concur.