**PISCIONE, Appellant,**

v.

**PISCIONE, Appellee, et al.** ■

[Cite as *Piscione v. Piscione* (1992), 85 Ohio App.3d 273.] ·

Court of Appeals of Ohio,
Lorain County.

No. 91CA005235.

Decided Sept. 2, 1992.

*Thomas H. Sanborn,* for appellant.

*Joseph Grunda, Jr.,* for appellee.

*Per Curiam.*

Plaintiff-appellant Diane M. Piscione appeals from the trial court's decision to terminate defendant-appellee Richard A. Piscione's spousal support obligation as of July 1, 1990 pursuant to the parties' divorce decree. We reverse.

The parties to this appeal were divorced pursuant to a judgment entry decree of divorce. That entry provided in pertinent part that spousal support would terminate upon appellant's entering into "a living arrangement similar to marriage." Based upon appellant's relationship with Layne Crittenden, appellee filed a motion to suspend or terminate spousal support "during the period of appellant's living arrangement similar to marriage." Following a hearing on that motion, the referee found that appellant was involved in a living arrangement similar to marriage and that the support obligation terminated effective July 1, 1990.

At the hearing, evidence was presented that appellant had been in a serious relationship with Layne Crittenden since shortly after her divorce, that Crittenden had free access to appellant's house, possessing his own set of keys and garage door opener, that he had at one time kept several changes of clothing there, that he had taken vacations with appellant and her children, that he celebrated holidays and his birthday with them and gave them gifts, that he attended church with them, that he performed maintenance around the house for appellant, and that he helped appellant's sons with their homework and Cub Scout activities.

There was also testimony that Crittenden spent many nights at appellant's home and had an ongoing sexual relationship with her, that his car was delivered to her home after it was repaired, that for a period of one month he had been seen on the property at all hours of the day and night, that he acted as supervisor and protector of appellant's children, and at times refused to allow them to see their father.

Testimony also indicated that appellant and Crittenden were considering marriage, and that upon learning that appellee had hired a private investigator to watch her activities, appellant attempted to hide her arrangement with Crittenden.

The trial court adopted the referee's recommendation, finding sufficient evidence that appellant had entered into a living arrangement similar to marriage. Appellant now appeals, raising two assignments of error.

### Assignment of Error I

"The trial court erred in adopting the recommendation and report of the referee to terminate spousal support payments when the divorce decree required a showing that the appellant had entered into a living arrangement similar to marriage and such a finding was against the manifest weight of the evidence."

Whether the trial court properly terminated appellant's right to support rests upon the meaning of one phrase: "a living arrangement similar to marriage." While this term has not been defined by the Ohio courts, a review of case law in this and other jurisdictions discloses that a variety of terms have been used to refer to this concept. Clauses of this type are routinely used to envision nothing less than the functional equivalent of a marriage. *Fisher v. Fisher* (1988), 75 Md.App. 193, 200–201, 540 A.2d 1165, 1168.

In Ohio, decrees often provide that the support obligation will terminate upon the wife's "cohabitation." Cohabitation requires some regularity of functioning as would a husband and wife, either sexually or otherwise. Typically it involves a man and woman living together in the same household and behaving as would a husband and wife. *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 254, 10 OBR 366, 367–368, 461 N.E.2d 1348, 1349–1350. What constitutes "living together" is a question of fact in each particular case. *Sindel v. Sindel* (App.1975), 7 O.O.3d 223, 226.

A Virginia court interpreting the term "cohabitation" held that like the phrase "marriage-type arrangement," it encompasses both a permanency or continuity element and an assumption of marital duties. The phrase "cohabitation, analogous to a marriage," the court continued, means a status in which a man and woman live together continuously or with some permanency, mutually assuming

duties and obligations normally attendant with a marital relation. It involves more than living together for a period of time and having sexual relations. *Frey v. Frey* (1992), 14 Va.App. 270, 274–276, 416 S.E.2d 40, 43.

A Maryland court has interpreted the meaning of a "marriage-type arrangement" to refer to a household to which each contributes, and to a more than casual personal relationship that has a significant meaning to each. *Fisher, supra,* 75 Md.App. at 202, 540 A.2d at 1169. Specifically, it held that a relationship in which there was no common residence, no common household and where the parties did not regard themselves as having a marriage-type relationship, but in which the boyfriend occasionally stayed overnight, performed chores and maintenance for the ex-wife, and took short trips with her fell far short of such an arrangement. *Id.*

Generally, the question of cohabitation is to be determined by the trier of facts. *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 254, 10 OBR 366, 367–368, 461 N.E.2d 1348, 1349–1350. If the judgment of the trial court is supported by some competent credible evidence going to all the essential elements of the case, it will not be reversed by an appellate court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

Construing the facts in the light most favorable to appellee, we do not believe that the evidence supports a finding of the existence of a living arrangement similar to marriage. Under the above standards, one thing is continually evident: the relationship must be of a permanent, continuing nature and it must be analogous to marriage. Here, the individuals unquestionably were involved in a serious relationship and spent a great deal of time together. However, we cannot say, based upon the evidence presented, that it rose to a level similar to marriage.

The first assignment of error is sustained.

### Assignment of Error II

"The adoption of the recommendation of the referee and ordering a termination of spousal support payments by the trial court constituted an abuse of discretion."

Because our determination of the first assignment of error has rendered the second assignment of error moot, we need not address this issue. See App.R. 12(C), effective July 1, 1991.

*Judgment reversed.*

REECE, J., concurs.

QUILLIN, J., dissents.

QUILLIN, Judge, dissenting.

I would defer to the trial court's finding.