**DIAL, Appellee,**

v.

**DIAL, Appellant.**

[Cite as *Dial v. Dial* (1993), 92 Ohio App.3d 513.]

Court of Appeals of Ohio,
Summit County.

No. 16273.

Decided Dec. 15, 1993.

*Barbara Mushkat,* for appellee.

*George Miller,* for appellant.

---

QUILLIN, Presiding Judge.

Appellant, Robert Dial, appeals from the trial court's order determining that appellee, Ann Dial, was not living in a state of concubinage and thus was entitled to continue receiving alimony payments pursuant to their divorce decree. We affirm.

Ann and Robert Dial were divorced on October 28, 1987, pursuant to a decree requiring Robert to pay spousal support of $1,250 per month. The decree further provided that alimony payments would continue "until such time as Plaintiff dies, remarries, or lives in a state of concubinage." In 1989, William Noland moved into appellee's home. According to testimony presented before a referee, during this time appellee and Noland had separate bedrooms, Noland did not generally receive mail at the residence, he did not usually eat with appellee, he did his own laundry and he took no vacations or trips with appellee.

There was further evidence, however, that appellee and Noland had a sexual relationship, that they went out socially, and that Noland made some rent, utility and car payments for appellee. In December 1991, Noland moved out of appellee's house at her request, but apparently continued to visit her regularly.

Appellant moved to terminate alimony based upon appellee's relationship with Noland. After an evidentiary hearing, the referee denied appellant's motion to terminate alimony, finding that appellee was not living in a state of concubinage. The court overruled appellant's objections to the referee's report and upheld the findings of the referee. Appellant appeals and raises one assignment of error:

"The trial court erred by not finding from the evidence presented that appellee had lived in a 'state of concubinage' with William Noland and, as a direct result thereof, alimony should have been terminated."

Appellant contends that the evidence established that appellee was living with William Noland in a state of concubinage and that the trial court therefore erred in denying his motion to terminate alimony.

We must first emphasize that the question of what constitutes "living in a state of concubinage" is to be determined on a case-by-case basis and is a question of fact. *Hodge v. Hodge* (Mar. 19, 1980) Summit App. No. 9480, unreported; *Piscione v. Piscione* (1992), 85 Ohio App.3d 273, 276, 619 N.E.2d 1030, 1032 (construing an analogous term contained in a divorce decree). Thus, we will not overturn the determination of the trial court if the judgment is

supported by some competent, credible evidence going to all the essential elements of the case, nor will we substitute our judgment for that of the trial court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; see, also, *Piscione, op. cit.*

This court has previously addressed the term "living in concubinage" in the context of a provision terminating alimony. In *Hodge v. Hodge, supra,* where alimony was to terminate upon the wife's remarriage or her living in concubinage, we reviewed varying definitions of that term from other jurisdictions:

"The consensus of the cases referred to in 8 Words and Phrases, Concubinage (Supp., 1979), is that it is the act of a man and woman cohabiting without ceremonial marriage or even the consent necessary for a common law marriage. In it the participants partake of the benefits of marriage such as sexual intercourse but without any of the concomitant responsibilities."

We opted to proceed slowly in *Hodge,* however, and to determine the meaning of the term on "a case-by-case basis." In that case, the ex-wife had been dating another man with whom she was having sexual relations. The evidence revealed that she served meals to this individual on an average of seven times a month, but that he did not support her. In upholding the trial court's determination that this relationship did not constitute "living in concubinage," we explained:

" * * * the circumstances do not suggest that this lawful fornication blossomed into other permanent conjugal benefits such as laundry, meals, shared expenses and income, vehicles, shared ownership of property, etc. * * * "

In a more recent opinion, *Gajovski v. Gajovski* (1991), 81 Ohio App.3d 11, 610 N.E.2d 431, we were faced with the question of whether a homosexual relationship could be considered "living in concubinage." In determining that it could not, we explained that concubinage connotes a relationship " 'in which a man and a woman, that is, two people capable of contracting marriage, are involved in an open, illicit sexual relationship approximating marriage.' " (Emphasis deleted.) *Id.* at 13, 610 N.E.2d at 432, quoting *Succession of Bacot* (La.App.1987), 502 So.2d 1118, 1129.

Many courts have considered the meaning of the term "cohabitation" as that term has been similarly used in divorce decrees. In *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476, for example, in determining whether the ex-wife had cohabited with another man, the court framed the issue as "whether the gentleman in question, by voluntarily undertaking certain aspects of a continuing relationship with the plaintiff, thereby assumed obligations equivalent to those arising from a ceremonial marriage." *Id.* at 280, 11 OBR at 461, 465 N.E.2d at 477.

This court declined to find the existence of "a living arrangement similar to marriage," another term used to connote the same concept, in *Piscione v. Piscione* (1992), 85 Ohio App.3d 273, 274, 619 N.E.2d 1030, 1031. In that case, evidence that the ex-wife had been in a serious and ongoing sexual relationship with another individual, that the individual possessed his own set of keys, that he performed maintenance around the house, that he acted as supervisor and protector of her children, and that he and the ex-wife took vacations together did not rise to the level of an arrangement similar to marriage and therefore alimony payments were not terminated.

The trial court found that appellee resided with Noland from January 1989 until December 1991, but that he did not receive mail there, that the two usually ate their meals separately, slept separately, that they did not hold themselves out as husband and wife, that they took no trips or vacations together and that they did their own laundry. The trial court could reasonably find that such a relationship did not rise to the level of one "approximating marriage." We defer to the trial court's finding that appellee and Noland were not living in a state of concubinage. The assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE and DICKINSON, JJ., concur.