MOELL, Appellant,

v.

MOELL, Appellee.

[Cite as *Moell v. Moell* (1994), 98 Ohio App.3d 748.]

No. 94OT024.

Court of Appeals of Ohio,
Ottawa County.

Decided Nov. 18, 1994.

Gene W. Graves, for appellant.

Stephen E. Cottrell and Brenda J. Majdalani, for appellee.

---

*Per Curiam.*

This is an accelerated appeal from a judgment issued by the Ottawa County Court of Common Pleas denying a motion to terminate spousal support in a domestic relations case. Because we conclude that the trial court did not abuse its discretion, we affirm.

Appellant, Jock R. Moell, and appellee, Suzan V. Moell, were divorced pursuant to a judgment entry dated April 27, 1992. Pursuant to that entry, appellant was ordered to pay spousal support beginning on January 17, 1992. The gradually decreasing support payments were to continue for a period of five years or "until defendant's death, remarriage or cohabitation with a member of the opposite sex, whichever occurs first."

On February 22, 1993, appellee filed a motion requesting an increase in spousal support and an increase in child support; appellee also moved for a finding of contempt, attorney fees, and a lump sum judgment. Appellant responded by filing motions to terminate spousal support, to credit payment on the lump sum property division, and for shared parenting of the minor children. On September

21, 1993, a referee held a hearing on these motions, establishing the following facts.

On March 21, 1992, appellee suffered a stroke which left her totally paralyzed on the left side of her body. She had difficulty speaking and was confined to a hospital bed in the intensive care unit. After one month, appellee was transferred to the Medical College of Ohio for inpatient physical rehabilitation therapy. Prior to her release from the hospital, appellee was advised that she would need full-time assistance to properly care for her needs.

On June 3, 1992, John Todd brought appellee home from the hospital and moved into appellee's home to provide the care she required. Although appellee and Todd had previously been involved in an intimate relationship, that relationship had ended before appellee suffered her stroke. However, while appellee was in the hospital, the relationship again changed and the couple became engaged.

Upon returning home, appellee was very weak, needing help to walk and to attend to her personal needs. Further, appellee was unable to clean the house, cook, or take care of her two children. Prior to the return of her children, who were temporarily living with appellant, Todd initially slept with appellee in order to accommodate her personal needs. After a month passed, the children returned home and, for a period of time, they slept in their mother's bedroom. Todd then slept on the couch or the floor.

During the first few months after appellee's stroke, Todd took a leave of absence from his employment. He worked only on occasions and lived off money from a savings account. In 1992, Todd earned approximately $32,000, losing $15,000 due to his leave of absence. Essentially, Todd did not resume full-time employment until September 1992.

Even after Todd moved in with appellee, he and appellee maintained separate finances. Todd kept his own separate checking account, from which he paid his own bills. None of appellee's money was placed in Todd's account. Todd has his own vehicle, but has occasionally used appellee's auto, paying for gasoline used. In addition, he has often paid for meals when the family eats out.

Currently, Todd and appellee also have a joint checking account. Todd's name was placed on the account because appellee, who was left-handed prior to the stroke, cannot yet write well enough to make out checks. Appellee's spousal support and child support checks are deposited into this joint account. The mortgage, utilities, and grocery expenses are paid out of the joint account. Todd places no money into the joint account nor does appellee pay any of Todd's bills. Todd also recently cosigned, as an accommodation party, a loan to refinance appellee's house; however, Todd received no financial benefit or interest in the property.

At the time of the hearing, appellee's condition had improved somewhat. She can now walk short distances in the house using a brace and cane. However, she still needs a wheelchair for greater distances and is unable to drive an automobile. Additionally, Todd still does most of the cooking and cleaning, mowing of grass, and taking care of the children. He also drives appellee to therapy and other necessary appointments. Todd and appellee both testified that, but for appellee's stroke, they would not be living together.

From the evidence presented at the hearing, the referee recommended a denial of appellee's motion for increased child support since appellee had not demonstrated a ten-percent variance from the child support guidelines which established the current child support amount. The referee further recommended a denial of both appellee's motion for an increase in spousal support and appellant's motion to terminate spousal support. The referee noted that, although appellee's current condition required a live-in health care provider, that care was being provided by John Todd. The referee concluded that the benefit appellee and Todd received from this arrangement was outweighed by the expense which appellee would incur were she to secure alternate health care. Therefore, neither an increase nor a termination was justified. The referee also noted that the spousal support does, in fact, decrease automatically.

Appellant filed objections to the referee's report. The trial court adopted the referee's report and appellant appeals that portion of the decision concerning spousal support. Appellant sets forth the following sole assignment of error:

"The trial court erred in adopting the referee's report and recommendation and abused its discretion in denying motion of plaintiff to terminate alimony and finding that defendant is not cohabiting with a member of the opposite sex."

Appellant contends that the trial court abused its discretion in adopting the referee's report. To determine this issue, we must first look to the reasons for awarding spousal support and including cohabitation clauses in divorce decrees.

The purpose of spousal support is to provide for the financial needs of the ex-spouse. *Thomas v. Thomas* (1991), 76 Ohio App.3d 482, 485, 602 N.E.2d 385, 387. If the ex-spouse is living with another person, and that person provides financial support or is supported, then the underlying need for spousal support is reduced or does not exist. *Id.*

The purpose of a cohabitation clause is to prevent inequity in two situations involving spousal support. The first situation occurs when an ex-spouse would receive support from two sources, each of whom is either legally obligated or voluntarily undertakes the duty of total support. *Perri v. Perri* (1992), 79 Ohio App.3d 845, 848, 608 N.E.2d 790, 792; *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 280, 11 OBR 459, 460, 465 N.E.2d 476, 477. The second

situation arises when the ex-spouse who is receiving spousal support uses such payments to support a nonrelative member of the opposite sex. *Perri, supra.* Cohabitation, in the legal sense, thus implies that "some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit termination of alimony. *Bussey v. Bussey* (1988), 55 Ohio App.3d 117, 563 N.E.2d 37." *Thomas, supra,* 76 Ohio App.3d at 485, 602 N.E.2d at 387.

Whether or not a particular living arrangement rises to the level of lifestyle known as "cohabitation" is a factual question to be initially determined by the trial court. *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848, 851, 623 N.E.2d 237, 239; *Piscione v. Piscione* (1992), 85 Ohio App.3d 273, 276, 619 N.E.2d 1030, 1032. Many factors may be considered in deciding whether cohabitation exists in a particular set of facts. We previously addressed the issue of cohabitation in *Dickerson v. Dickerson, supra.* In that case, we noted that "cohabitation" describes an issue of lifestyle, not a housing arrangement. *Dickerson, supra,* 87 Ohio App.3d at 850, 623 N.E.2d at 239. Further, when considering the evidence, the trial court should look to three principal factors. These factors are "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Id.* at fn. 2, citing *Birthelmer v. Birthelmer* (July 15, 1983), Lucas App. No. L–83–046, unreported, 1983 WL 6869.

However, in addition to the above three factors, the court may also consider other relevant criteria, including both the behavior and the intent of the parties. Whether the parties have assumed obligations, including support, equivalent to those arising from a ceremonial marriage is a highly persuasive factor. *Taylor, supra,* at the syllabus. Intent to cohabit, while not conclusive, may also be an indicator of cohabitation. *Id.,* 11 Ohio App.3d at 281, 11 OBR at 461, 465 N.E.2d at 478. Likewise, neither the presence nor the absence of a sexual relationship is dispositive of the issue of cohabitation. *Id.,* at the syllabus. Additionally, contemplation of marriage has been considered and found not to be conclusive. See *Piscione v. Piscione, supra,* 85 Ohio App.3d at 275, 619 N.E.2d at 1031. Each case must be evaluated on its own particular set of facts to determine whether cohabitation exists.

In the present case, it is undisputed that appellee and her companion have lived together in appellee's house since June 1992 and are engaged to be married. Although they sleep in the same bed, the couple has not had sexual intercourse since appellee's stroke; they have, however, engaged in "sexual contact." Todd assists appellee with almost every aspect of her life, including child care, house cleaning, cooking, and personal care. Further, the couple have a joint checking

account, and Todd cosigned to accommodate the refinancing of appellee's house. Therefore, while some of the facts of this case appear to support a conclusion that the couple is cohabiting, others do not.

The trial court considered the motivation behind many of the actions taken by Todd and appellee. The overwhelming reason why Todd moved into appellee's home was the occurrence of appellee's debilitating stroke. Both appellee and her companion testified that, except for the stroke, they would not be living together. Also, in weighing the facts of this case, the trial court fully considered the support issues between appellee and Todd. With the exception of food, no expenses are shared, each keeping his or her own separate accounts and finances. Neither receives any substantial direct monetary support from the other. Although Todd certainly provides the aspect of emotional support of a ceremonial marriage, one of the most important factors to establish cohabitation is missing. That factor is financial support. Appellee does not financially support Todd; Todd does not provide financial support for appellee.

Appellant maintains that Todd receives support because he lives in appellee's home while paying no rent. However, the trial court weighed that benefit against the amount saved by appellee in not hiring a full-time caretaker. We can find no authority that prevents the trial court from balancing these benefits when considering whether the parties' relationship has had any economic impact on appellee's continued need for support.

An appellate court will give great deference to the findings and conclusions of the trial court where reasonable minds could weigh the evidence and arrive at contrary conclusions. *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 254, 10 OBR 366, 367–368, 461 N.E.2d 1348, 1349. Further, the trial court has broad discretion in determining spousal support. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 86–87; *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1298. After considering a totality of the circumstances, a reviewing court may not substitute its judgment for that of the trial court, absent an abuse of discretion. *Kunkle, supra; Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599. An abuse of discretion connotes more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In this case, in light of appellee's medical and health-care needs, the evidence could support the conclusion that appellee and her companion have not assumed the mutual obligations of financial support required to establish cohabitation between the parties. We conclude, therefore, that the trial court did not abuse its discretion in adopting the referee's report when it denied appellant's motion to

terminate spousal support. Accordingly, appellant's sole assignment of error is not well taken.

The judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.

*Judgment affirmed.*

HANDWORK and SHERK, JJ., concur.

MELVIN L. RESNICK, J., dissents.