AUSTIN, Appellant,

v.

AUSTIN, Appellee.

[Cite as *Austin v. Austin,* 170 Ohio App.3d 132, 2007-Ohio-676.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 06CA0047–M.

Decided Feb. 20, 2007.

L. Ray Jones and Joseph F. Salzgeber, for appellant.

Allan M. Michelson, for appellee.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Marie Austin, has appealed from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, which granted plaintiff-appellee George Austin's motion to terminate spousal support. This court reverses.

## I

{¶ 2} Appellant and appellee were divorced on February 25, 1999. The parties' decree states that appellee would pay spousal support in the amount of $600 per month "until such time as the Wife remarries, [or] cohabitates in a relationship akin to a marriage with a man to whom she is not related by blood or dies."

Prior to the final decree being entered, appellant had moved out of the marital residence and was living on her own. At that time, she met a man living in the same apartment complex, David Fischbach, and began a sexual relationship with him. That relationship ended several months later, but the two remained friends.

{¶ 3} On April 2, 2001, appellant and Fischbach entered into a partnership agreement, forming a locksmith business. Shortly after starting their business, the two realized they needed more room for the business. As a result, they rented a three-bedroom townhouse together in late April 2001. In October 2002, the two purchased a four-bedroom home together, again to account for the expanding business. The two lived together in the house, maintaining separate bedrooms. Along with the two, Fischbach's mother and another employee of the business live in the home.

{¶ 4} On November 15, 2004, appellee filed a motion to terminate his spousal support, alleging that appellant was cohabitating with Fischbach. The matter was heard before a magistrate, who recommended that appellee's support be terminated. Appellant timely objected to the magistrate's decision. The trial court overruled appellant's objections and terminated appellee's support obligation, finding that appellant was cohabitating with an unrelated male. Appellant has timely appealed the trial court's judgment, raising one assignment of error for review.

## II

### Assignment of Error

The trial court erred and abused its discretion by granting appellee ex-husband's motion to terminate spousal support, where its finding that appellant ex-wife "co-habitated," in the legal sense of the term, with an unrelated adult male was against the manifest weight of the evidence.

{¶ 5} In her sole assignment of error, appellant has argued that the trial court erred in finding that she was cohabitating. Specifically, appellant has asserted that her living arrangement does not meet the definition used by the parties in their separation agreement. This court agrees.

{¶ 6} The question of what constitutes cohabitation must be determined on a case-by-case basis. *Dial v. Dial* (1993), 92 Ohio App.3d 513, 514, 636 N.E.2d 361. This court will not reverse the lower court's determination regarding cohabitation if it is supported by some competent, credible evidence, nor will we substitute our judgment for that determination. *Schrader v. Schrader* (Jan. 21, 1998), 9th Dist. No. 2664-M, 1998 WL 46757, at *8, citing *Dial,* 92 Ohio App.3d at 515, 636 N.E.2d 361.

 {¶ 7} "Cohabitation," in the sense the term is used in domestic relations, is a term describing a lifestyle, not a housing arrangement. *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848, 850, 623 N.E.2d 237. Without a showing of financial support, merely living with an unrelated member of the opposite sex is insufficient, in and of itself, to permit termination of spousal support. *Thomas v. Thomas* (1991), 76 Ohio App.3d 482, 485, 602 N.E.2d 385. Moreover, the existence or absence of a sexual relationship is not dispositive of the issue of cohabitation. *Moell v. Moell* (1994), 98 Ohio App.3d 748, 752, 649 N.E.2d 880. "Cohabitation * * * usually will be manifested by a man and woman living together in the same household and behaving as would a husband and wife." *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 254, 10 OBR 366, 461 N.E.2d 1348.

> The purpose of a cohabitation clause is to prevent inequity in two situations involving spousal support. The first situation occurs when an ex-spouse would receive support from two sources, each of whom is either legally obligated or voluntarily undertakes the duty of total support. The second situation arises when the ex-spouse who is receiving spousal support uses such payments to support a nonrelative member of the opposite sex. (Citations omitted.) *Moell*, 98 Ohio App.3d at 751–752, 649 N.E.2d 880.

Accordingly, the pertinent issue is whether the cohabitant has "assumed obligations equivalent to those arising from a ceremonial marriage." *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 280, 11 OBR 459, 465 N.E.2d 476.

 {¶ 8} The Ohio Supreme Court has defined the essential elements of cohabitation as (1) sharing of familial or financial responsibilities and (2) consortium. *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126, paragraph two of the syllabus. Factors that establish the sharing of familial or financial responsibilities include "provisions for shelter, food, clothing, utilities, and/or commingled assets." Id. at 465, 683 N.E.2d 1126. Factors that establish consortium include "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." Id. However, in addition to the above factors, "the court may also consider other relevant criteria, including both the behavior and the intent of the parties. Whether the parties have assumed obligations, including support, equivalent to those arising from a ceremonial marriage is a highly persuasive factor." *Moell*, 98 Ohio App.3d at 752, 649 N.E.2d 880.

{¶ 9} Initially, we note that the parties dispute whether the provision contained in their divorce decree is more or less stringent than the factors contained in *Williams*. Specifically, appellant has asserted that the parties' use of the language "akin to marriage" is more stringent than the definitions contained in our precedent. We agree.

{¶ 10} This court has previously determined that the parties' choice of language impacts the review performed by this court. See *Coe v. Coe*, 9th Dist. No. 03CA0104–M, 2004-Ohio-3845, 2004 WL 1620787, at ¶ 6 (finding that the parties' separation agreement had chosen to use the definition of cohabitation adopted by the Ohio Supreme Court and using that definition). In contrast to the parties in *Coe*, the parties herein chose to define cohabitation as living with an unrelated male in a relationship "akin to a marriage." Because the parties voluntarily entered into the separation agreement, we must give effect to the language they chose to employ. "The purpose of contract construction is to effectuate the intent of the parties[,]" and that intent "is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 509 N.E.2d 411.

{¶ 11} "Akin" is defined as "essentially similar, related, or compatible." Webster's New Collegiate Dictionary (1980) 28. Appellee has proposed that the choice of the word "akin" greatly expands on the definition of "marriage," effectively eliminating the need for any type of intimate relationship. We cannot agree with that interpretation. Marriage has been said to grant both "a personal as well as a legal right to each other's [conjugal] society." See *White v. Buchwalter* (1947), 49 Ohio Law Abs. 589, 75 N.E.2d 604. Appellee's definition seeks to remove any requirement of a level of sexual intimacy and effectively seeks to replace "marriage" with "friendship." The parties, however, chose to define cohabitation as a relationship similar to a marriage. As such, while consummation of a sexual relationship through sexual intercourse is not mandatory if a legal marriage ceremony has occurred, such sexual intimacy or its equivalent is needed in the absence of such a ceremony to support a finding that appellant is living in a relationship similar to a marriage. In other words, we find that some level of sexual intimacy and contact must be demonstrated in this case due to the parties' choice of the term "marriage." To accept appellee's proposed definition would abrogate any distinction between roommates sharing expenses and two persons living in a relationship "akin to a marriage."

{¶ 12} It is undisputed that appellant is living with an unrelated adult male, David Fischbach, and has lived with Fischbach since 2001. Fischbach's elderly mother and another man, Lynwood Backwith, also currently live in the house. Both appellant and Fischbach testified that the home was purchased so that the two could continue to run a business partnership together and so that Fischbach's mother could move into the home in order to receive care. Both also testified that Backwith is an employee of the business and resides at the home to aid in receiving calls the business receives at night.

{¶ 13} Furthermore, it is undisputed that appellant and Fischbach share financial and familial responsibilities. Along with Backwith, both appellant and

Fischbach aid in paying the mortgage and utilities for the home. In addition, the two have commingled their assets. Both Fischbach and appellant appear on the deed to the property. The deed itself is a survivorship deed, awarding the survivor of the two the full property. In addition, all of the individuals living in the home pool money to buy groceries and other household necessities. Accordingly, the trial court had before it competent, credible evidence that demonstrated that the parties share finances.

{¶ 14} Appellant, however, has argued that the trial court heard no evidence that would support a finding of consortium. Specifically, appellant has asserted that her living arrangement is nothing more than a business relationship. We agree.

{¶ 15} Initially, we note that the parties agree that appellant once had a sexual relationship with Fischbach but that her sexual relationship with him ended prior to their moving in together. Appellee does not dispute that appellant has not been involved in a sexual relationship with Fischbach since prior to living with him. In fact, appellee presented no competent, credible evidence that appellant's living arrangement is anything more than a business relationship.

{¶ 16} As noted above, this court may properly consider the intent and behavior of the parties in determining whether the parties' definition of cohabitation has been met. The undisputed facts herein demonstrate that the parties never intended that their living arrangement would be similar to a marriage. They have had only a business relationship since they began living together. Further, another unrelated adult, Backwith, also lives in the home. It is undisputed that Backwith lives in the home because he aids the parties in conducting their business.

{¶ 17} On appeal, appellee has argued that the following facts support the trial court's judgment. Appellant cares for Fischbach's elderly mother without compensation, and the parties' finances and assets are commingled. As noted above, there is no dispute that the parties have commingled their assets and finances. However, this fact is irrelevant to a finding of consortium. In fact, as Backwith has also commingled his assets to contribute to household expenses, the sharing of expenses supports a finding that appellant is not living in a relationship akin to a marriage. Furthermore, while appellant cares for Fischbach's elderly mother, it cannot be said that she receives nothing in return for her activities. While appellant does not receive a salary, Fischbach testified unequivocally that he pays more than his percentage of the household expenses.

{¶ 18} There is no competent, credible evidence in the record to support the trial court's finding that appellant and Fischbach are living together in a relationship akin to a marriage. Rather, the sole evidence presented is that the

two are living under the same roof to facilitate their business relationship. Contrast *Synovetz v. Synovetz* (Apr. 24, 1996), 9th Dist. No. 95CA006197, 1996 WL 199443. In *Synovetz*, this court held that the parties were living in a continuous, permanent relationship that was analogous to a marriage. Id. at *2. In *Synovetz*, however, the parties chose to live together out of personal choice, rather than as a business decision. Furthermore, in *Synovetz*, the trial court heard testimony from a relative of that appellant that the appellant was engaged to the man she was living with, that it appeared to the relative that the appellant shared a bedroom with this man, and that the appellant and the man were "more than just friends." Id. Therefore, we find that the current factual scenario is distinguishable.

{¶ 19} Undoubtedly, there is some overlap between the parties' business relationship and the factors contained in *Williams*. To be a successful business, the partners must aid one another, cooperate, and have mutual respect for another. As noted above, however, the parties chose to expand upon *Williams* by requiring a relationship "akin to a marriage." As such, a finding of mutual respect and cooperation is insufficient to warrant terminating support under the definition chosen by the parties.

{¶ 20} In addition, appellee has argued that terminating his support obligation is consistent with public policy because appellant is now receiving support from another party. We disagree.

{¶ 21} Appellant testified that she could not afford to live in the home unless others contributed to the expenses associated with it. However, the sharing of living expenses in and of itself is insufficient for a finding of cohabitation. *Schrader*, 1998 WL 46757, supra, at *8. Appellee has introduced no evidence to support any conclusion other than that appellant is sharing living expenses with multiple other individuals—i.e., the sole evidence indicates that she is sharing expenses in a larger home to accommodate her business partnership.

{¶ 22} Accordingly, the trial court did not have before it competent, credible evidence that appellant was living in a relationship "akin to a marriage." Therefore, appellant's sole assignment of error has merit.

III

{¶ 23} Appellant's sole assignment of error is sustained. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

SLABY, P.J., concurs.

CARR, J., dissents.

CARR, Judge, dissenting.

{¶ 24} I respectfully dissent. I would hold that appellant was cohabitating in a relationship akin to a marriage with a man to whom she is not related by blood.

{¶ 25} The majority finds that the parties' use of the language "akin to marriage" in the decree is more stringent that the definitions contained in our precedent. I disagree. In fact, this court has previously used the phrase "akin to marriage" when defining cohabitation. See *Synovetz v. Synovetz* (Apr. 24, 1996), 9th Dist. No. 95CA006197, 1996 WL 199443, at *2, citing *Piscione v. Piscione* (1992), 85 Ohio App.3d 273, 276, 619 N.E.2d 1030. Therefore, I would not draw a distinction between the language chosen by the parties and this court's precedent regarding cohabitation.

{¶ 26} I further find that the trial court's determination that appellant's living arrangement with Fischbach is more than a business relationship is supported by competent, credible evidence in light of the factors set out in *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126, which include "provisions for shelter, food, clothing, utilities, and/or commingled assets." Id. at 465, 683 N.E.2d 1126. Accordingly, this court cannot substitute its judgment for that determination.

{¶ 27} In this case, the parties agree that appellant once had a sexual relationship with Fischbach, but that her sexual relationship with him ended prior to their moving in together. Accordingly, the trial court had no evidence of conjugal relations between Fischbach and appellant while they lived together. In the hearing below, however, the trial court heard substantial evidence of mutual respect, affection, cooperation, friendship, and aid of each other. Significantly, there is evidence that appellant and Fischbach have commingled their assets. Both Fischbach and appellant appear on the deed to the property they share. The deed itself is a survivorship deed, awarding the survivor of the two the full property. In addition, appellant testified that she was the primary caregiver for Fischbach's mother, who lives in the home. Appellant is not paid for her caregiving, nor has she asked for compensation for those activities. Furthermore, appellant refers to Fischbach's mother as "mom," despite the lack of any familial relationship. In addition, appellant admitted that the individuals living in the house sit down for meals together whenever they are all home. Appellant also testified that she does laundry for Fischbach.

{¶ 28} The evidence before the trial court demonstrated that appellant's living arrangement was more than just a business relationship. She has aided Fischbach by caring for his elderly mother at no cost; appellant refers to Fischbach's

family as if it were her own; she eats meals with Fischbach when he is not working; the two cook for one another; and appellant does Fischbach's laundry. These are not the typical features of a business relationship. Rather, they are the typical features of a relationship built on friendship, respect, affection, and cooperation. As such, the trial court had before it competent, credible evidence of consortium.

{¶ 29} In addition, I believe that the termination of appellee's spousal support obligation is consistent with the purpose of cohabitation clauses. Appellant is currently receiving monetary support from Fischbach. The two share expenses and have shared expenses for a significant amount of time. The two appear together on a survivorship deed and have lived and worked together since 2001, evidencing that their relationship is continuous and permanent. Contrast *Piscione,* 85 Ohio App.3d at 273, 619 N.E.2d 1030 (finding no evidence that the parties' relationship was permanent and continuous). Because appellant is receiving voluntary support from another source, public policy coupled with the parties' separation agreement dictates that appellee's support obligation be terminated.

{¶ 30} I would affirm the trial court's judgment granting appellee's motion to terminate spousal support.