[Cite as *Fox v. Fox*, 2014-Ohio-1887.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

DENISE FOX n.k.a. ASKREN, :

     Plaintiff-Appellee, :

      :

   - vs - :

      :

WILLIAM FOX, :

     Defendant-Appellant. :

CASE NO. CA2013-08-066

O P I N I O N
5/5/2014

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2010DRA01794

R. Bryan Hawkins, 137 ½ Main Street, Milford, Ohio 45150, for plaintiff-appellee

Law Office of Rebecca S. Cepluch, Rebecca S. Cepluch, 722 Nilles Road, Fairfield, Ohio 45014, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, William Fox (Husband), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, denying his motion to terminate his spousal support obligation.

{¶ 2} Husband and Denise Fox (n.k.a. Denise Askren) (Wife) were divorced in October 2011 after 27 years of marriage. Husband was awarded the marital home; Wife was

awarded a 12-unit apartment building. Wife was ordered to vacate the marital home by September 1, 2011. Husband was ordered to pay Wife $3,000 per month in spousal support, effective September 1, 2011, through May 31, 2019. Pursuant to the divorce decree, spousal support was to terminate "upon either party's death or upon [Wife's] remarriage or cohabitation with an unrelated adult male." The trial court specifically retained jurisdiction over the amount of spousal support, but not as to duration. Husband did not appeal the divorce decree.

{¶ 3} On November 19, 2012, Husband moved to terminate his spousal support obligation on the ground Wife was cohabitating with Daniel Hadley. In an affidavit attached to his motion, Husband requested that his spousal support obligation be terminated retroactively to its September 1, 2011 inception, and that Wife reimburse him for all spousal support previously paid.

{¶ 4} Husband also asserted that (1) the spousal support award "placed [him] into immediate financial hardship" resulting in the foreclosure of the marital home due to his inability to pay the mortgage; (2) prior to the October 17, 2011 divorce decree, he had knowledge of an affair between Wife and Hadley and "of their prior intent to engage each other in a conspiracy to extract as much as possible from [Husband]"; (3) since October 17, 2011, he has discovered that Wife "has received continuous support and assistance from Hadley for a significant period of time and that the two plan to marry"; and (4) evidence that Wife and Hadley "participated in a conspiracy to cohabitate * * * was not provably discovered and effectuated until after all marital assets were divided and the spousal support ordered."

{¶ 5} In April 2013, a hearing on the motion was held before a magistrate. Several persons testified on behalf of Husband. Husband also called Wife as a witness as if on cross-examination. During Wife's testimony, Husband's counsel sought to introduce a photograph of Hadley (exhibit U) taken when the parties were married. Wife's counsel

objected to the photograph. Husband's counsel argued that the photograph and several others were relevant to prove that Wife and Hadley were cohabitating during the parties' marriage, and certainly since September 1, 2011. The magistrate ruled that she would allow only evidence concerning Wife's relationship with Hadley "starting with the date of the divorce decree."

{¶ 6} Following Wife's cross-examination, Husband's counsel asked the magistrate whether she wanted to deal with Husband's exhibits. The magistrate replied, "I always deal with exhibits at the [very] end." Subsequently, Husband's counsel conditionally rested; Wife's counsel moved to dismiss on the ground Husband had failed to prove cohabitation. After a brief argument by both counsel, the magistrate granted the motion to dismiss. The hearing then continued on a motion for attorney fees filed by Wife. At the conclusion of the hearing, most of Husband's exhibits were admitted into evidence. The magistrate denied Husband's counsel's request to admit exhibit U on the ground the exhibit "was pre-decree and the starting point is the decree of divorce."

{¶ 7} By decision filed on April 24, 2013, the magistrate denied Husband's motion to terminate spousal support on the ground Wife's relationship with Hadley did not rise to cohabitation. The magistrate found in particular, but not solely, that Wife and Hadley did not have a sexual relationship. Husband filed objections to the magistrate's decision. Specifically, Husband challenged the magistrate's finding there was no cohabitation, the magistrate's finding that cohabitation requires a sexual relationship, and the magistrate's refusal to allow any pre-divorce evidence of the relationship between Wife and Hadley.

{¶ 8} On August 12, 2013, the trial court overruled Husband's objections and adopted the magistrate's decision. With regard to the exclusion of the evidence, the trial court found that "[i]f [Wife] was cohabitating at the time of the divorce, the issue should have been raised at the final hearing on divorce. In the alternative, [Husband] could have appealed the divorce

decision. To allow [Husband] to raise this issue now is, in essence, granting [him] the right to re-litigate the divorce proceedings." With regard to cohabitation, the trial court agreed that the magistrate erred in finding that cohabitation required a sexual relationship, and found that the existence of sexual relations was only one fact to be considered. The trial court further found there was insufficient evidence that Wife and Hadley were cohabitating.

{¶ 9} Husband now appeals, raising three assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT REFUSED TO PERMIT PRE-DIVORCE RELATIONS BETWEEN APPELLEE AND HER PARAMOUR - DANIEL HADLEY FOR PURPOSES OF COHABITATION WHEN APPELLANT LACKED EVIDENCE OF THE RELATIONS UNTIL AFTER THE PARTIES' DIVORCE AND ORDER OF SPOUSAL SUPPORT.

{¶ 12} Husband argues the trial court abused its discretion when it excluded the pre-divorce evidence of the relationship between Wife and Hadley. Husband asserts the excluded evidence (1) was "clearly relevant to establish the duration of the cohabitation" because it plainly established the emotional and physical intertwinement of Wife and Hadley during the parties' marriage, and (2) substantially bolstered the post-divorce evidence of cohabitation. Husband asserts this "compelling" evidence "could not be discovered, collected, and adequately presented" during the divorce proceedings or "within the appeal period of the divorce hearing."

{¶ 13} It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 16. An abuse of discretion is more than an error of judgment; it means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} Evid.R. 103(A)(2) provides that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is thereby affected and the substance of the excluded evidence was made known to the court by proffer or was apparent from the context of the questions being asked. *See Oyer v. Oyer*, 12th Dist. Madison No. CA88-03-007, 1988 WL 96624 (Sept. 19, 1988). A "'reviewing court will uphold the trial court's decision to exclude evidence if the record does not contain a proffer.'" *Clamp v. Szekeres*, 5th Dist. Stark No. CA-9103, 1993 WL 76353, *1 (Mar. 15, 1993), quoting *State v. Chapin*, 67 Ohio St.2d 437, 444 (1981). In the case at bar, Husband did not proffer the substance of the evidence into the record. Rather, in his argument to the magistrate, he simply stated that the evidence would show that Wife and Hadley were in a relationship and communicating during the parties' marriage, and thus were cohabitating.

{¶ 15} As discussed later in this opinion, cohabitation means that two people are living together, for a sustained period of time, with shared expenses as to financing and day-to-day living. *See Harrell v. Harrell*, 9th Dist. Lorain No. 95CA006164, 1996 WL 170373 (Apr. 10, 1996). There is no evidence that Wife and Hadley were living together during the divorce proceedings before September 2011, or during the period of time from September 1, 2011, to October 17, 2011 (the date of the divorce decree). Husband does not claim the evidence would show that Wife and Hadley were living together during this time, merely that Wife and Hadley were in a relationship and communicating. The trial court properly found that if Wife was cohabitating at the time of the divorce, as that term is defined under case law, Husband should have either raised the issue at the final hearing on divorce or appealed the divorce decree. He did neither.

{¶ 16} Further, while Husband broadly asserts the excluded evidence was not discoverable until after the divorce decree, he does not explain why he could not discover such evidence earlier. The record shows that following the divorce decree, Husband

resorted to both criminogenic and lawful methods to gather evidence of cohabitation. There is no explanation as to why Husband could not use similar or different methods to gather evidence of cohabitation during the divorce proceedings, especially since Husband "had knowledge of an affair" between Wife and Hadley, and "of their prior intent to engage each other in a conspiracy to extract as much as possible from [Husband] for their joint benefit," prior to October 17, 2011. As the trial court aptly stated, to allow Husband to raise this issue now would be "in essence, granting [him] the right to re-litigate the divorce proceedings."

{¶ 17} Accordingly, we find the trial court did not abuse its discretion in excluding Husband's pre-divorce evidence of the relationship between Wife and Hadley. Husband's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE COURT ERRED TO THE PREJUDICE OF APPELLANT AFTER DETERMINING AN ERRONEOUS FINDING BY THE MAGISTRATE THAT COHABITATION REQUIRED A SEXUAL RELATIONSHIP BETWEEN TWO PARTIES.

{¶ 20} Husband argues that once the trial court found the magistrate erred in finding that sexual relations were necessary for purposes of cohabitation, the trial court should have remanded the matter to the magistrate "for further proceedings or for reconsideration," rather than adopt the magistrate's decision.

{¶ 21} In ruling on objections to a magistrate's decision, Civ.R. 53(D)(4)(d) requires a trial court to undertake an independent review of the objected matters to determine whether the magistrate properly determined the factual issues and appropriately applied the law. *Koeppen v. Swank*, 12th Dist. Butler No. CA2008-09-234, 2009-Ohio-3675, ¶ 26. In so doing, a court "may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Civ.R. 53(D)(4)(b); *Hampton v. Hampton*, 12th Dist.

Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 13. The trial court has the "ultimate authority and responsibility" over the magistrate's findings and rulings. *Hartt v. Munobe*, 67 Ohio St.3d 3, 5 (1993). When a magistrate has failed to properly determine the factual issues and appropriately apply the law, the trial court must substitute its judgment for that of the magistrate. *Hampton* at ¶ 14, citing *Crosby v. McWilliam*, 2d Dist. Montgomery No. 19856, 2003-Ohio-6063, ¶ 34.

{¶ 22} Simply because the magistrate improperly determined that sexual relations were a sine qua non of cohabitation does not require the trial court to remand the matter to the magistrate for further proceedings. *See* Civ.R. 53(D)(4)(b). The record shows that in determining that Wife and Hadley were not cohabitating, the magistrate did not solely rely on the lack of sexual relations between the two of them. Likewise, in determining that Wife and Hadley were not cohabitating, the trial court clearly considered all of the properly submitted evidence, and not simply the lack of sexual relations. *See Taylor v. Taylor*, 11 Ohio App.3d 279 (1st Dist.1993) (remanding the matter to the trial court where the magistrate and the trial court unequivocally found sexual intercourse to be a necessary condition of cohabitation, where both the magistrate and the trial court determined there was no cohabitation because there was no sexual intercourse, and where there was no transcript of the hearing before the magistrate).

{¶ 23} Accordingly, the trial court did not err in adopting the magistrate's decision rather than remanding the matter to the magistrate. Husband's second assignment of error is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING INSUFFICIENT EVIDENCE WAS PRESENTED TO SUSTAIN A FINDING OF COHABITATION BY APPELLEE AND HER PARAMOUR - DANIEL HADLEY.

{¶ 26} Husband argues that given the surreptitious bank account intertwinement of Wife and Hadley, their check co-signing, a diamond engagement ring, Wife's non-arms-length rental property transfer to Hadley, and her admission of sleeping in the same bed with Hadley for over a year, the trial court erred in finding that Wife and Hadley were not cohabitating.

{¶ 27} Within the context of a divorce decree, "cohabitation" contemplates a relationship that is the functional equivalent of a marriage. *See Piscione v. Piscione*, 85 Ohio App.3d 273 (9th Dist.1992). According to the Ohio Supreme Court, "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459, 465 (1997).

{¶ 28} In determining whether cohabitation exists, courts consider three principal factors: "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 11. Cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10. "[L]iving together and sharing expenses is non-conclusive evidence of cohabitation." *King v. King*, 12th Dist. Warren No. CA93-07-053, 1993 WL 489729, *1 (Nov. 29, 1993). "[T]here must be a showing of mutual financial support before spousal support can be terminated." *Aldridge v. Aldridge*, 12th Dist. Preble No. CA97-09-025, 1998 WL 640903, *3 (Sept. 21, 1998).

{¶ 29} Whether a particular relationship or living arrangement constitutes cohabitation is a question of fact best determined by the trial court on a case-by-case basis. *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 10. Consequently, an

appellate court will not overturn a trial court's finding regarding cohabitation as long as it is supported by some competent, credible evidence. *Id.*; *Austin v. Austin*, 170 Ohio App.3d 132, 2007-Ohio-676, ¶ 6 (9th Dist.). In determining whether competent and credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Keith* at ¶ 12, quoting *Bey v. Bey,* 3d Dist. Mercer No. 10-08-12, 2009-Ohio-300, ¶ 15.

{¶ 30} Upon a thorough review of the record, we find that competent, credible evidence supports the trial court's finding that Wife and Hadley were not cohabitating at the time of the hearing.

{¶ 31} Wife testified that at the time of the divorce decree in October 2011, she and Hadley were friends, and that they began dating 14 months prior to the hearing (thus, in February 2012). Due to Hadley's erectile dysfunction, they do not have sexual intercourse. However, beginning in April 2012, Hadley started spending more nights at Wife's home (three to four times a week), although not always in her bed. Wife and Hadley either walk or work out together almost every morning. In December 2011, Hadley gave her a diamond pendent and diamond earrings, which she returned to him. In 2012, he gave her a "ring with diamonds on it" which "was used as a friendship ring." She lost the ring a week later. Wife testified she would like to marry Hadley sometime in the future.

{¶ 32} Pursuant to the divorce decree, Wife was required to vacate the marital home by September 1, 2011. Wife testified that while she and Hadley looked at a couple of houses together, she did most of her search online. Unable to find a property that could house a horse, Wife ended up renting a house from Hadley on Weil Road in Moscow, Ohio. Wife moved into the house in September 2011. She entered into a lease agreement and pays

Hadley $1,000 a month in rent (typically by check). There is no evidence that the monthly rent payment is not a fair market rental.

{¶ 33} The record indicates Hadley bought the Weil Road property in May 2011, initially with the intent to fix it and resell it. Hadley made several necessary repairs and improvements to the house, including putting up and painting drywall, "waterproofing downstairs," repairing a water leak, and installing a new roof. The record also indicates that Hadley installed three fish tanks and a rabbit cage for the benefit of Wife's children, let the children each pick a color for their rooms, installed a dog fence, mows the grass on the property, and stores the lawn mower in a barn on the property (Wife and one of her daughters also mow the grass). Because Hadley is the property owner and landlord, there was an evidentiary basis upon which the trial court could conclude that the foregoing repairs and labor do not rise to a level of financial support. *See Aldridge*, 1998 WL 640903.

{¶ 34} The record indicates that Hadley has his own residence in Cincinnati, Ohio (located 15 minutes away from Wife's residence), and that correspondence from the church he and Wife attend are sent to two separate addresses. There is no evidence Hadley receives mail at the Weil Road property. There is no evidence Hadley resides in the house on Weil Road. Although Hadley sometimes brings over groceries and has paid for activities (such as a trip to Tennessee and going to the zoo, a haunted house, and tubing), there is no evidence he pays or helps with Wife's monthly bills and expenses, including utilities. *See Piscione*, 85 Ohio App.3d 273 (finding no cohabitation under similar circumstances); *Burns*, 2012-Ohio-2850 (same). Occasionally, Hadley loans money to Wife (for car repairs or bicycles for her children); Wife pays him back.

{¶ 35} As stated earlier, Wife was awarded a 12-unit apartment building as part of the parties' property division. Pursuant to the divorce decree, Wife was required to either refinance or otherwise extinguish Husband's mortgage liability on the apartment building by

- 10 -

April 17, 2012. The record shows that Wife listed the building for sale in early October 2011 for $300,000 (it was appraised at $240,000 in July 2011), reduced the listing price to $280,000 in late October 2011, and sold it to Hadley for $117,000 in late February 2012. There is no evidence as to whether Wife tried to refinance the property or received offers from potential buyers. Wife testified she "had to act quick on getting rid" of the apartment building. Due to the time constraint to which Wife was subject in the sale of this property, the sale was somewhat of a "distress sale," providing a reasonable explanation for the sale at less than the appraised value.

{¶ 36} During the time she owned the building, tenants mailed their rent checks to P.O. Box 90, New Richmond, Ohio. After Hadley purchased the building, he continued to use the same P.O. Box for rent checks. He also uses the box as the tax mailing address for the Weil Road property. Wife testified that they never rented the box together, and that while she occasionally checks the box for Hadley, she does not have a key to the box. A former tenant's testimony indicates that after Hadley purchased the building, Wife helped Hadley manage the building with regard to billing and tenancy issues (the former tenant vacated his apartment in November 2012). Additionally, the phone number provided to the tenants to contact Hadley was identified as being owned in Wife's name. Wife testified that her Verizon Wireless Plan covers three phone numbers, including Hadley's number, and that in exchange, he pays her $20 per month.

{¶ 37} The record shows that Wife and Hadley have separate bank accounts (Hadley has one with Union Savings Bank and one with Fifth Third Bank; Wife has one with River Hills Bank), and that they do not share a bank account. The record indicates that in 2012, Wife wrote several checks on behalf of Hadley from his Union Savings Bank account, which he then signed. Most of the checks were for the apartment building (Duke Energy, deposit return, repairs and improvements). A handful of checks were written and signed by Wife.

Likewise, the record shows that in 2012, Wife also wrote several checks on behalf of Hadley from his Fifth Third Bank account, which he then signed. Wife was not asked why she wrote checks for Hadley on his bank accounts, and no explanation was otherwise given.

{¶ 38} In light of the foregoing, we find that while Wife and Hadley share a close relationship, the evidence supports the trial court's determination that it does not rise to cohabitation. *See Piscione*, 85 Ohio App.3d 273; *Burns*, 2012-Ohio-2850. Therefore, while nothing precludes the trial court from finding Wife and Hadley are cohabitating should their relationship more resemble a marriage in the future, after a thorough review of the record, we find the trial court's determination that Wife and Hadley were not cohabitating at the time of the hearing was supported by competent, credible evidence. Husband's third assignment of error is accordingly overruled.

{¶ 39} Judgment affirmed.

RINGLAND, P.J. and S. POWELL, J., concur.